The Albany Northern Railroad Company *vs.* Lansing.

Upon a hearing before commissioners of appraisal, appointed pursuant to the 15th section of the general railroad act, the commissioners have the right to hear the proofs and allegations in such order as they may deem most conducive to justice, between the parties, and to decide which party shall open and close the argument.

The intention of the legislature was, by that act, to confine the commissioners to an estimate of the price to be paid by the railroad company, to the owner of land proposed to be taken, regardless of the benefits or injuries which might result to him as the owner of adjoining land, in consequence of the contemplated improvement.

It is a proper rule for the commissioners to adopt, that they will allow full compensation for the land taken, including therein the damages to the adjacent land by reason of such taking; but that they will not allow consequential and prospective damages.

The commissioners are not required to confine themselves to the actual, abstract value of the land to be taken, as though the owner would have no other lands left, to be affected by the improvement.

They are to consider how the *taking* of the land; not how *the use* of it in any particular mode, will affect the residue of the owner's land, and award compensation accordingly.

It is therefore correct for them to reject conjectural evidence, offered for the purpose of showing that the owner might be injuriously affected, should a railroad be constructed and used upon the land to be taken.

This was an appeal from the appraisal and report of commissioners, appointed pursuant to the 15th section of the general

railroad act.(*a*)   The route of the plaintiffs' road runs through the defendant's land.   The quantity taken was 60-100 of an acre. The commissioners awarded to the defendant $450.   Upon the hearing, the counsel for Mr. Lansing claimed the right to open and close the argument, but the commissioners refused to allow him this privilege.   He also offered to prove that the land not taken would be greatly depreciated in its market value, by reason of the part taken *being used for railroad purposes; also,* that the buildings on the residue of the lot would be less desirable as a place of residence or business, *by reason of their proximity to the railroad, thus to run through the lot,* and their exposure to the noise, smoke and other annoyances attending the passage of engines and trains ;  *also,* that the buildings would be exposed to be set on fire by sparks from the engines; *also,* that cattle and horses on the land adjacent to the track of the road would be liable to be frightened and injured by the passage of engines and trains ; that it was difficult and unsafe to work teams on lands adjoining a railroad ; that cattle were in danger, when crossing the track, of running along the track and being killed, and that the general value of a farm lot, would, *in consequence of these inconveniences,* be diminished ; *also,* that a railroad through a farm is a great injury to it and to the general business and operations of a farm in this part of the country, and that the value of the farm generally is greatly diminished thereby.   All this evidence the commissioners rejected, and they stated, as the rule by which they should be governed in determining the amount of compensation to be awarded to the defendant, that they should allow "*the full compensation for the land taken, including therein the damages to the adjacent land by reason of such taking, but that they should not allow consequential and prospective damages.*"   Upon this principle they made their award. The defendant appealed.

O. *Meads,* for the plaintiffs.

W. W. *Frothingham,* for the defendant.   ...   .      .....

(*a*) *Laws of* 1850, *ch.* 150, *p.* 211.   1 *R. S.* 4*th ed. p.* 1220.

*By the Court,* HARRIS, J.   The commissioners were required " to view the premises and hear the proofs and allegations of the parties." Having done this, they were required, without any unnecessary delay, to proceed to determine the compensation, &c.   The order in which they would proceed in the discharge of this duty was a matter wholly within their discretion.   They might not omit to hear the proofs and allegations of the parties, but whether they would hear these before or after viewing the premises, it was for them to decide. So, whether one party or the other should be first heard, was for them to determine.   Having decided that the counsel for the railroad corporation might open and close the hearing, the defendant was concluded by their decision.   If, on the other hand, the same privilege had been awarded to the owner of the land, it would have furnished no ground of objection to the validity of the proceedings.   The decision of the commissioners in this respect was, perhaps, more in analogy to judicial proceedings, than to have allowed the owner to close the case, but it is enough to say that the commissioners had the right to hear the proofs and allegations in such order as they might deem most conducive to justice between the parties.

Nor do I think the commissioners have erred in the principle adopted by them as the basis of their appraisal.   The subject of appraisal was "the real estate proposed to be taken."   This they were required to view.   It was in respect to this, that they were to hear the proofs and allegations of the parties.   And then, as if to exclude all speculation as to the effect of the construction of the proposed road, they are prohibited from making any "allowance or deduction on account of any real or supposed benefit which the parties may derive from such construction." The obvious intention of the legislature was, to confine the commissioners to an estimate of the price to be paid by the railroad company to the owner upon this involuntary sale of his land, regardless of the benefits or injuries which might result to him as the owner of adjoining land, in consequence of the contemplated improvement.   This legislative intent is, I think, very successfully embodied in the rule adopted by the commissioners.

The Albany Northern Railroad Co. *v.* Lansing.

They certainly were not required to confine themselves to the actual, abstract value of the land to be taken, as though the owner would have no other lands left to be affected by it. Had they done this, their award would have been less than $100, for it was admitted upon the hearing that the average value of Mr. Lansing's land was $175 per acre. They were to consider how *the taking* of the land, but not *the use* of it, in any particular mode, would affect the residue of the owner's land. Would it leave that residue in an inconvenient, unmarketable shape? If so, this fact might properly be taken into the account in determining the amount of compensation. Thus, if the land to be taken should lie between the owner's house and the highway, the amount of compensation should be vastly more than for the same quantity of land equally valuable in itself, but situated in some remote part of the owner's premises. The commissioners, therefore, were right when they decided that they would include in the compensation for the land to be taken "damages to the adjacent land by reason of *such taking*." But the fact that the land to be taken would be used for a railroad, rather than any other lawful business, formed no part of the materials out of which the award was to be made. Whether the land taken was to be used for a *railroad*, or a *garden*, was a question, so far as compensation was concerned, with which the commissioners had nothing to do. Their duty was to award compensation for *the taking* of the land, and not for *the use* to which it should be applied, when taken. Nothing could be more unjust, in principle, than to prohibit the commissioners from considering the *benefits* which the owner of the land would derive from the construction of the road, and yet require them to consider what inconveniences or injuries might be the result of such construction. It was for this, in substance, that the owner contended before the commissioners. The legitimate office of testimony is to ascertain and establish facts; but to have allowed the defendant in these proceedings to introduce the testimony offered by him, would have been to open a field of speculation and conjecture, where, from the very nature of the case, no facts were to be investigated, and where the commissioners themselves, after hav-

ing heard such testimony, would be obliged to resort to their own speculations and conjectures, in order to determine the value of the evidence. The legislature never intended to impose such a duty upon the commissioners. They were right, therefore, in rejecting the conjectural evidence offered for the purpose of showing that the defendant might be injuriously affected, if a railroad should be constructed and used upon the land to be taken. Such evidence could have no legitimate influence upon the appraisal they were required to make.

As there was no error either in rejecting the evidence offered, or in the principle adopted by the commissioners as the basis of their appraisal, there is no ground for disturbing the report, and the application to send it back for review, must be denied.

[Albany Special Term, July 27, 1852. *Harris*, Justice.]