IN THE MATTER of the appraisal of the compensation to be made by the UTICA, CHENANGO AND SUSQUEHANNA VALLEY RAILROAD COMPANY, for real estate proposed to be taken from Joseph Mening, Frederick Reith and Walburga Reith, his wife.

When the owner of real estate voluntarily conveys it, without restrictions, the purchaser can use it for the purpose of a railroad, or for any other lawful business, without subjecting himself to damages to his grantor.

But when land is taken for the construction of a railroad, without the consent of the owner, the compensation to be paid therefor is not limited to the actual value of the land taken and to the depreciation of the residue of the lot from which it is taken, by such separation; but the owner is entitled to recover, also, for any depreciation caused by the *use to which it is appropriated*.

Where only a portion of a lot is taken for the roadway of a railroad, the question is, what will the lot as a whole bring in the market after the railroad is constructed. And every thing which will depreciate the value of that residue is to be taken into the account.

If the land remaining is rendered less valuable because it is more exposed to fire; or if access to it is rendered more difficult; or if the use of the remainder is more inconvenient by reason of the railroad; or if its value is depreciated by the noise, smoke, or increased dangers caused by the use of the railroad—all these circumstances are to be included in the estimate of damages.

The question, in such a case is, what is the market value of the entire lot, without the railroad, and what is the market value of the remainder thereof with the railroad; or, in other words, what is the value of the piece which is taken, and how much is the residue depreciated in its market value by the separation, and by the construction of the railroad; which two sums, added together, is the amount to which the owner is entitled.

The increase of risk by fire from locomotives, if any, is properly included in the estimate of damages for land taken for a railroad.

Under the provision of the general railroad act, requiring commissioners of appraisal " to ascertain and determine the compensation which ought justly to be made by the company to the person or persons interested in the real estate appraised by them," the compensation is not confined to the value of the land actually taken, nor to the depreciation of the residue by the separation of the other part from it; but it is the compensation which ought justly to be made to the owners of the real estate appraised by them—compensation for all the injury that the taking of the land, for the purpose intended, will cause them.

Although one land owner has no right to damages caused by the lawful use

of the lands of another adjoining his, whether by a railroad company or otherwise, yet neither the legislature nor the courts can authorize the taking of a portion of his property for a use which will be injurious to the residue from which it is to be separated, without affording him a compensation for all such injury.

APPEAL from an appraisal of commissioners pursuant to section 16 of chapter 140 of the laws of 1850, as amended by section 3 of chapter 282 of the laws of 1854, and by section 4, of chapter 582 of the laws of 1864, for lands in the city of Utica, described in the petition in this matter, proposed to be taken for the construction of the railroad of the above named company, from the city of Utica to the village of Waterville. On the hearing before the commissioners, Joseph Mening appeared in person, Frederick Reith and Walburga Reith appeared by their attorney, J. Thomas Spriggs, and the railroad company appeared by their attorney, H. Hurlbut. Joseph Mening admitted that he had no interest in the premises in question, but that he had conveyed them to Walburga Reith; and Frederick Reith also disclaimed title to any part of them, and requested that the appraisal be made in the name of, and paid to, Walburga Reith.

After viewing the premises and hearing the testimony offered on the part of the respective parties, two of the commissioners, the other being present, determined and fixed the amount of compensation which ought justly to be made by the company to the owner at the sum of $100, and reported the same to this court; from which determination and report Walburga Reith appealed.

*J. Thomas Spriggs*, for the appellants.

*H. Denio*, for the respondents.

*By the Court*, FOSTER, J. The land taken was for the roadway of the respondents' railroad, and was in the form

of an acute triangle, taken out of the northwesterly corner of the city lot of the appellant, and included the ground on which stood an old stable and shed, in which Frederick Reith, who was a baker, kept his horse and baker's wagon, and fronted on a lane or alley, a portion of which was also taken by the respondents, and so as to make it more difficult for the appellant to reach that end of her lot. On the lot from which this piece was taken, was a dwelling-house and a baker's oven, located near the line of the piece so taken by the railroad company. Although there was some conflict in the evidence, it clearly showed that the damage of the appellant was not confined to the value of the land taken, and the damage to the residue of the lot, from the mere separation from it of the triangular piece, but that the taking of that portion, *for the purpose of a railroad*, would materially deteriorate the market value of the residue of the lot. That it would increase the risk to the buildings by fire, and increase the rates of insurance upon the buildings, which were insurable upon a valuation of $1000 to $1200, and would subject the occupants of the lot to inconvenience and discomforts on account of the railroad.

Thomas Lane and Orville Combs, two of the commissioners, reported that they had " ascertained and determined the amount of compensation which ought justly to be made by the company to the party owning the premises, for the lands proposed to be taken from the owner in fee, for the purposes of said company, at the sum of $100, for the value of the piece taken, and the depreciation of the remainder of the property by the taking of that piece, but that nothing was allowed for the depreciation of the remainder, occasioned by an increased risk of fire, from locomotives; nor for depreciation in its market value occasioned by the use of the piece taken for a railroad; nor from the annoyance, noise, smoke and discom-

fort and inconvenience of having a railroad located and operated there."

John F. Seymour, the other commissioner, reported that he agreed in the amount allowed for the mere taking, but that he dissented from the exclusion of the other items of depreciation and risk above mentioned; for which he held there should be additional compensation.

It is not claimed that any compensation was awarded to the appellant other than for the value of the land taken, and the depreciation of the residue caused by the separation; or that any thing was awarded for depreciation caused by a railroad being constructed there; though it is claimed, on the part of the respondents, that the majority of the commissioners have decided the fact to be that there were no damages except for the land taken, and to the residue caused by the separation therefrom of the piece taken. It is, however, sufficient to say, that a fair construction of the report of the majority shows that they did consider that other damages were proved, but that they had no right to allow such damages; and if they had found otherwise upon the question of fact, the testimony is too strong to the contrary, to allow us to uphold such finding.

The only real question before us is, must the compensation in such cases be restricted to the actual value of the land taken, and to the depreciation of the residue of the lot from which it is taken by such separation? Or is the owner entitled to recover also for any depreciation caused by the use to which it is appropriated?

There is no doubt that when the owner of real estate voluntarily conveys it, without restrictions, the purchaser can use it for the purpose of a railroad, or for any other lawful business, without subjecting himself to damages to his grantor.

The rule also is, that where land is taken for public use, or for the purposes of a corporation, by appraisement, the owner cannot afterwards claim consequential damages to

other and separate premises, of which the land taken was not a part. (*The Canandaigua and Niagara Falls Railroad Co.* v. *Payne*, 16 *Barb.* 273.) And where private property is taken for public use, or for the use of a corporation, one whose land is not taken is not entitled to damage, though he suffer indirect or consequential injury from such use of it; as where a municipal corporation, under a rightful authority contained in its charter, grades and levels a street, an action on the case will not lie by an adjoining owner, whose lands are not actually taken, for consequential damages to his premises, there being no want of care or skill in the execution of the work, and no provision in the charter for the payment of damages of that kind. (*Radcliff's Executors* v. *The Mayor &c. of Brooklyn*, 4 *Comst.* 195.) These rules are as just as they are necessary, and without them it would be very difficult if not impossible to carry on any of the great public improvements, which are doing so much to facilitate the progress of the age; and they are the same which obtain between individuals.

The individual who purchases land of one man, may put it to any lawful use without being in any way accountable to another for any injury which he may sustain by such use. We all hold our property subject to the fluctuations which may be caused by lawful use of the property of our neighbors; and when we convey land, if we would restrict its lawful use, we must do so in the conveyance which we execute. If we do not, we are remediless for any injury which we sustain from it.

But is it so when the legislature authorizes a corporation to divest an owner of his title to real property? Are we subject at the will of the legislature to have a part of a piece of property which we own taken from us, by the public, or by a corporation, and without our consent, and applied to a use which will destroy or seriously impair the value of the residue, and without any compensation for

that injury, merely because such use may be beneficial to some important interest, or to the whole public? Certainly if the use to which it is to be applied is remunerative, such sacrifice by the owner is not called for; and if it will not pay, then the sacrifice to be made for its benefit should be a public one, and not fall upon the individual landholder alone.

In support of the proposition that such loss must fall upon the land owner, the counsel for the railroad company has cited the cases of *The Albany Northern Railroad Company* v. *Lansing*, (16 *Barb.* 68,) and *The Troy and Boston Railroad Co.* v. *The Northern Turnpike Company*, (*Id.* 100.)

In the first of these cases, which was at special term, Harris, J., held that upon an appraisement for lands taken for a railroad, while the commissioners are not required to confine themselves to the actual abstract value of the land to be taken, as though the owner would have no other land left, to be affected by the improvement, "they are to consider how the taking of the land, not how *the use* of it, in any particular mode, will affect the residue of the owner's land, and award compensation accordingly." It must be conceded that the question decided by the learned judge was substantially the same that is involved in the case before us, and is entitled to all the consideration which its reasoning presents, although not binding upon us as authority.

The other case of the *Troy and Boston Railroad Co.* v. *The Northern Turnpike Co.* has, in my judgment, but little bearing on the present question. It arose upon an appraisement of the damages of the turnpike company, by reason of the line of the railroad crossing the turnpike at four different places. The commissioners of appraisal allowed testimony to show that the construction of the proposed railroad would decrease the business of the turnpike company by diverting its travel and by rendering the

use of it more unsafe. Testimony was also received to show that certain improvements in the bed of the turnpike at some of the crossings would be necessary to prevent its usefulness from being impaired. The commissioners also allowed damages for the said supposed injuries, and upon appeal by the railroad company the appraisal was set aside. The commissioners had no right to suppose that any expense would be incurred by the turnpike company in restoring its road at the crossings, to its usefulness, or to allow damages therefor. The statute made it the duty of the railroad company to restore it to such a state as not necessarily to impair its usefulness, and if in the construction of its railroad that was not done, the turnpike company would have the right to compel the railroad company to do it, and to recover all damages occasioned by the want of it.

Nor had the turnpike company any just claim for the consequent decrease of travel or business on their road. It held a franchise granted to it mainly for the convenience of business and travel, and was authorized to take the property of individuals for the use of its road, upon the terms prescribed. That franchise was accepted by the company with the knowledge that the legislature could alter, modify or repeal it. The exercise of the franchise had necessarily caused indirect and consequential damages to individuals, while it benefited others, and for which no compensation had been made or could be obtained.

And the company had no right to complain (when still greater facilities to the public were furnished by a railroad) that it suffered thereby the same kind of injury which it had before inflicted and was still inflicting upon others. It had no exclusive rights, and could not complain that other or rival lines of communication and travel were authorized by the legislature, or that it was subjected to competition. The court, Harris, J., says: " The commissioners were to ascertain and determine what compensa-

tion ought justly to be made to the turnpike company for granting to the railroad company an easement, or right of way, across their road at the four places specified. Any proof having a legitimate bearing upon this question, and which by the established rules of evidence would be received in a court of law, in a case involving a similar inquiry, should have been received. All other proof should have been rejected."

We are also referred by the counsel to the case of the *Canandaigua and Niagara Falls Railroad Co.* v. *Payne*, (36 *Barb*. 271.) In that case the line of the railroad was laid through the village lots of Payne, which were located north of Sweeny street in the village of Tonawanda. On the south side of Sweeny street, and between that street and the Tonawanda creek, Payne had a sawmill, on a separate lot, and on the hearing before the appraisers he was allowed to prove the injury to the mill in consequence of the constructing and operating the railroad, and they allowed large damages therefor. The court at special term set aside the report of the commissioners, holding that the injury to the mill, situate on a detached piece of land of Payne's, caused by the constructing and operating the railroad, was not the subject of compensation; and Harris, J., said the question was "how the taking of the portions of the lots described in the petition would affect the value of what was left, or what was the fair marketable value of the whole property, and then what would be the fair marketable value of the property not taken."

In *The Troy and Boston Railroad Co.* v. *Lee*, (13 *Barb*. 169,) the court say: "In making appraisals of this kind, the true rule, the only rule that will do equal justice to all parties, is to determine what will be the effect of the proposed change upon the market value of the property. The proper inquiry is, what is it now fairly worth in the market, and what will it be worth *after the improvement is made?* Or, in the language of Bronson, J., in the *Matter of Fur-*

*man street,* (17 *Wend.* 670,) "The proper mode of adjusting the question of damages is to inquire what is the present value of the land, and what will it be worth when the contemplated work is completed."

The true question, I think is, what will the place as a whole bring in the market without the railroad, and what will the residue bring in the market after the railroad is constructed. And everything which will depreciate the value of that residue is to be taken into the account.

If the land is rendered less valuable because it is more exposed to fire; or if access to it is rendered more difficult; or if the use of the remainder is more inconvenient by reason of the railroad; or if its value is depreciated by the noise, smoke or increased dangers caused by the use of the railroad—all these are to be included in the estimate of damages. Not that witnesses are to be called upon to estimate damages for each or any of them; for though they enter into the estimates, the question is what is the market value of the whole land, without the railroad, and what is the market value of the remainder of the piece with the railroad; or, in other words, what is the value of the piece which is taken, and how much is the residue depreciated in its market value, by the separation and by the construction of the railroad; which two sums, added together, is the amount of compensation to which the appellant in this case is entitled. I have no doubt that the increase of risk by fire, if any, is properly included in the estimate. If a party conveys his land to a railroad company for the roadway, he cannot afterwards recover for damages caused by fire, by the operating of the road, where no negligence is proved. (*Rood* v. *The N. Y. and Erie Railroad Co.*, 18 *Barb.* 80.) And this is because of the presumption that the parties had that risk in view when the sale was made, and that part of the consideration paid was intended to cover that risk.

The rule is the same in a case where the title of the rail-

road company is acquired by an appraisal. Such appraisal and payment of the sum awarded, gives as complete a title to the railroad company, and its right to use it is as extensive, as it is when derived by a conveyance from the owner, and the presumption that all such risks are included in the appraisement is equally strong.

In the case last cited, MASON, J., says: "It is fairly to be inferred that the defendants paid for their right of way all damages which could be legitimately claimed for a right of way for such purposes. The statute under which the defendants were authorized to acquire lands for their road, provides in terms for ascertaining the damages which the owner of such lands or real estate will sustain by the occupation thereof by the corporation." (*Laws of* 1832, *ch.* 224, § 9.) The language of this statute is broader than that of the Massachusetts statute, under which it has been held that the exposure to fire from the engines of the company, and the increased insurance upon buildings situated near the line of the road, are proper subjects to be taken into consideration in the estimating damages for land taken for a railroad. (2 *Metc.* 147. 3 *Cush.* 107.)

Although the language of the section authorizing the appraisal by the New York and Erie Railroad, and of the act under which this appraisal was made, are not identical, their import and meaning are the same. In the one case the appraisal was to be of such damages as the owner of such lands will sustain *by the occupation thereof by the corporation.* In the case before us, the act requires the commissioners to "ascertain and determine the compensation which ought justly to be made by the company to the owners or persons interested in the real estate appraised by them." This language does not confine the compensation to the value of the land actually taken, nor to the depreciation of the residue by the separation of the other part from it, but it is the compensation which ought justly to be made

to the owners of the real estate appraised by them. Compensation for what? Compensation for all the injury that the taking of the land, for the purpose intended, will cause them. The purpose for which the land is taken is shown by the petition, and when the title is acquired it is only for such purpose; and the purpose for which it is to be used is necessarily one of subjects for which compensation is to be awarded. When the land is acquired by purchase, the presumption is that all claims for such damages are included in the contract, and that the company pays for them; and if the theory of the commissioners is the correct one, the company may offer the land owner such a price only as they know he will not accept, and then proceed by appraisal, and without paying anything except as these commissioners have allowed, acquire all the rights which they could have obtained by purchase, and payment to the owner, for all the injuries which he would suffer from the road.

It must be recollected that this statute, so far as it divests owners of their lands without their consent, and vests them in railroad corporations, is in derogation of common law rights, and must be liberally construed in favor of such owners; and whenever the language of such a statute is broad enough, as it clearly is in this case, to include compensation for all the injury which would be caused by such taking and use, it is to be construed that the legislature intended to afford such full and ample compensation.

One land owner has no right to damages caused by the lawful use of the lands of another adjoining his, whether by a railroad or otherwise; but neither the legislature or the courts can authorize the taking of a portion of his property for a use which will be injurious to the residue from which it is to be separated, without affording him a compensation for all such injury.

The determination and report of the commissioners should be set aside, and a new appraisal made by them,

either upon the testimony already given, or upon a rehearing, if either of the parties prefer it, in which appraisal is to be included all the damages which the appellant will sustain to his said premises by the construction and use of the railroad, and including compensation for the piece of the lot taken for the road.

[ONONDAGA GENERAL TERM, April 7, 1868. *Foster, Mullin* and *Morgan,* Justices.]