## DETERMINED IN THE

# FOURTH DEPARTMENT,

### AT

# GENERAL TERM,

### January, 1883.

In the Matter of the Application of the NEW YORK, LACKAWANNA AND WESTERN RAILWAY COMPANY, Appellant, to Acquire Lands of SAMUEL E. HASKIN, Respondent.

*Eminent domain — measure of damages for land taken by a railroad company — the report of the commissioners cannot be affected by a certificate, stating the rule adopted in estimating the damages.*

A railroad company took proceedings to acquire title to a portion of four different parcels of land owned by one Haskin, one of which, containing about 223 acres, was called the Home Farm. It was used for raising blooded horses and fitting them for the market. The line of the proposed road crossed a half-mile track which had been constructed upon it by Haskin to be used in his business. Testimony was received against the company's objection and exception as to what, in the opinion of the witnesses, would be the damage to the farm, as a stock farm, to have the track destroyed, and as to "the value of the track to the Home Farm, as a stock-raising farm, taking into consideration the stock upon it and its present use."

*Held,* that the evidence was improperly admitted.

That the measure of the owner's damages was the cost of constructing another training track upon his farm and not the damages (to which such testimony would appear to relate) which he would sustain if the stock, which he was then raising and training, were lost and this branch of his business destroyed.

The validity of the report of commissioners appointed to appraise the damages resulting from the taking of land for railroad purposes cannot, after it has been signed and filed, be affected by a certificate signed by one of them setting forth the rule adopted by them in estimating the damages.

Hun—Vol. XXIX.    1

APPEAL from an order made at a Special Term, confirming the report of commissioners appointed to appraise the value of land to be taken by a railroad company.

*D. Rumsey*, for railway company, appellant.

*W. F. Cogswell*, for Haskin, respondent.

SMITH, P. J.:

This is an appeal by the railway company from the appraisal and report of commissioners appointed to appraise the compensation to be made for the real estate condemned for railroad purposes in this proceeding, and from the order of the Special Term confirming said report and appraisal. The respondent is the owner of three separate farms in Avoca, Steuben county, and an outlying piece of twenty-four acres on the opposite side of the highway from one of said farms, upon all of which the railway company seeks to obtain a right of way. One of the farms contains 126 acres, another 223 acres and the third 221 acres. The quantity of land which the company takes from all the tracts is fifteen and sixty-five hundredths acres, and the compensation awarded by the commissioners is the sum of $14,500, in gross, there being no specification of the amount awarded for either piece separately. The farm of 223 acres, called the "Home Farm," was used by the respondent for raising blooded horses and fitting them for market, and he had constructed upon it a half-mile track to be used in his business. The route of the railroad crosses that track. The respondent was permitted to ask a witness what in his opinion would be the damage to the farm, as a stock farm, to have the track destroyed. The answer was, "at least five thousand dollars damages." Another witness testified in answer to a similar question that the damage would be from $5,000 to $10,000. A third witness testified to the number of crosses of imported blood that one of the respondent's stallions had; and the respondent himself was permitted, as a witness in his own behalf, to say that in his opinion "the value of the track to the Home Farm, as a stock raising farm, taking into consideration the stock upon it and its present use," was $10,000. All the testimony above stated was duly objected to, and the principal question in the case

is whether the admission of the same or any part thereof was error for which the report and appraisal should be set aside.

The reported cases are agreed, substantially, that under the provisions of the general railroad act requiring commissioners of appraisal " to ascertain and determine the compensation which ought justly to be made by the company to the person or persons interested in the real estate appraised by them," the true measure of compensation is the difference between the market value of the entire single lot, farm or tract without the railroad, and the market value of the remainder thereof with the railroad. But in the application of the rule some differences have arisen. Thus it was held in some of the earlier cases that the commissioners are to consider how the *taking* of the land, not how the *use* of it in any particular mode, will affect the residue of the owner's land. Upon that view of the matter evidence offered by the landowner to show that the land not taken would be greatly depreciated in market value by reason of the part taken being used *for railroad* purposes, also that the buildings on the residue would be exposed to be set on fire by sparks from the engines, or would be less desirable as a place of residence or business by reason of their proximity to the railroad, was held to be conjectural and inadmissible. (*The Albany Northern R. R. Co.* v. *Lansing*, 16 Barb., 68.) The same judge by whom the case just cited was decided at Special Term expressed similar views in *The Troy and Boston Railroad Company* v. *The President, etc., of the Northern Turnpike Company* (Id., 100), and *The Canandaigua and Niagara Falls Railroad Company* v. *Payne* (Id., 273). Those cases were followed in *The Union Village and Johnsonville Railroad Company* v. *Akin* (53 Barb., 457), decided by the General Term in the third district. But in the case of *The Utica, etc., Railroad Company* (56 Barb., 456), it was held by the General Term in the fifth district that the compensation to be paid to the landowner is not limited to the actual value of the land taken, and to the depreciation of the residue of the lot from which it is taken, but he is entitled to recover also for any depreciation caused by the use to which it is appropriated. And it was decided accordingly in that case that the increase of risk by fire from locomotives, if any, is properly included in the estimate of damages for land taken for a railroad. The reasoning and decision in that case

were approved and followed by the General Term in the third department, *In the Matter of the New York Central and Hudson River Railroad Company* (15 Hun, 63). We think the cases last cited give the better application of the rule.

We are of the opinion, therefore, that the respondent was entitled to introduce any evidence that tended legitimately to show in what respect and to what extent, if any, the part of his land not taken would be injured by the use of the land taken for the purposes of a railroad ; and we think, also, that in so doing he was not limited to the value of his land for ordinary farming purposes, but he might give evidence of its value for any other purpose to which it was adapted, including that of raising and training blooded horses and cattle, so far as it had been specially fitted for and appropriated to that use. His damages in those respects, caused by the construction and operation of a railroad through his land, were the direct consequence of the taking of his property for public use. (*Trustees of College Point v. Dennett*, 5 T. & C., 217; *Matter of the N. Y. Cen. and Hud. R. R. R. Co.*, 6 Hun, 149.)

But, under the rules above approved, much of the testimony offered by the respondent and received by the commissioners, to which attention has already been called, was inadmissible. The respondent seems to have been allowed to build up a case for damages upon the theory that the spoiling of his training track involved the loss not only of the stock which he then had on his farm in the process of raising and training, but also the destruction of that branch of his business. Upon no other idea could it have been held competent for him to show what damage the destruction of the training track would be to the farm "as a stock farm,". "taking into consideration *the stock upon it* and its present use," or to show what blood flowed in his stallions' veins. The answers given by the witnesses to the questions referred to show that they had the same idea as to the nature and extent of the damages as was adopted by the commissioners. The true measure of damages in that regard, was what it would cost to make another training track upon the respondent's farm. There is undisputed evidence in the case tending to show that a new track, substantially as good as the old one, could have been made on the farm for a few hundred dollars.

The respondent's counsel insists that the error above pointed out was harmless, inasmuch as one of the commissioners has certified that in estimating the damages caused by the destruction of the track, the commissioners adopted the basis above suggested as the true one. As the certificate was made after the commissioners had signed and delivered their report, and exhausted their powers, it was a nullity, and could not be regarded as a part of the appeal papers, except for the fact that it was filed by the appellant, and therefore he cannot be heard to say that it is not properly brought up. But treating it as a part of the record, of what weight is it? It will hardly be claimed that a similar error committed by a referee on the trial of a cause could be cured by a like certificate, signed by him after delivering his report, or that a certificate of jurors, to the effect that certain improper evidence received on the trial did not affect their verdict, could be considered on appeal. It was held, in *The People ex rel. Hodgkinson* v. *Stevens* (5 Hill, 616), that the legal effect of a return made by inspectors of election cannot be varied by a supplementary statement, signed by a part of them and delivered after the time for returning has expired. The presumption is, that all evidence, whether proper or improper, received and retained by a trial court until its decision is pronounced, had its natural effect upon the decision, and that presumption cannot be overcome by any subsequent assertion of the person or persons composing the tribunal by which the decision was made. But even if the certificate is treated as evidence that the single commissioner who signed it disregarded the improper testimony in question, how is it possible for him to know what effect the testimony had upon the minds of his colleagues who concurred with him as to the amount of compensation?

One of the commissioners, it is to be observed, dissented as to the amount. There was a wide difference upon that point between the witnesses called by the respective parties. The average estimate made by the witnesses called by the company was a little over $7,000, and that of the witnesses produced by the landowner was nearly $22,000. This difference of opinion on the part of the witnesses and of the commissioners can hardly be accounted for, except upon the idea that the witnesses for the contestant adopted the erroneous theory as to damages above pointed out, and the dissent-

ing commissioner not being prepared to assent to it, was for that reason unable to agree with his colleagues.

The counsel for the respondent cites the case of *Matter of the Boston Road* (15 W. Dig., 223), since reported in 27 Hun, 409. It was held in that case that the judgment of commissioners as to the amount of damages sustained by a landowner by reason of the widening of a public street could not be reviewed. The proceeding in that case was had under a special statute which made it the duty of the commissioners appointed under it to view the premises affected by the improvement, and to acquire information which there were no means of bringing before the court. (See *Matter of William and Anthony Streets* (19 Wend., 678; opinion of BRONSON, J., 695, 696.)

That case is plainly distinguishable from the present one. The act of 1850 provides for the examination of witnesses and gives a right of appeal. And it is well settled that the testimony is a part of the report, and that if the commissioners have adopted an erroneous principle in estimating damages their appraisal will be set aside.

The conclusion is inevitable that a wrong principle has been followed in estimating damages to the "Home Farm," and as the appraisal is in gross, the error cannot be corrected, except by setting aside the entire report and ordering a new appraisal.

The report and order should be set aside and the case sent to new commissioners, to be appointed by the Special Term, with directions to report the damages to each farm and the twenty-four acre piece separately ; ten dollars costs of this appeal and disbursements to be paid by the respondent.

Present — SMITH, P. J., and HARDIN, J.

So ordered.