In the Matter of the Petition of THE NEW YORK ELE-VATED RAILROAD COMPANY, Relative to Acquiring Title to Certain Property in the City of New York.

*Elevated railroad* — 1875, *chap.* 606 — *injuries to an adjoining owner's easements of light, air and access — what injuries cannot be considered by the commissioners.*

Under the authority conferred upon it by chapter 606 of 1875, the petitioner constructed an elevated railroad in Front street, in the city of New York. This railroad passed in front of the premises owned by one Story, which he then occupied and used to carry on his business as a dealer in spices. The street in front of his premises was held by the city of New York, in trust, as a public street, for the convenient use and enjoyment of the public. The defendant's road is supported by girders, which extend transversely across the street and rest at each end upon iron piers placed in the sidewalk, inside the curb lines. No pier stands in front of Story's premises. The bottom of the structure is fifteen feet and one inch above the surface of the street, and the ties, which are six inches wide and separated by open spaces of twelve inches, extend to within eleven feet and one-half inch of the front of Story's building.

Commissioners appointed to appraise the damages sustained by Story, by the construction and operation of the petitioner's road, reported that they had allowed him a gross sum as damages for the injury to his right or privilege to have Front street, opposite his premises, kept open and unobstructed and continued as a public street; and for the serious interference with and impairment of his rights to light, air and access to his property, which had been occasioned by the construction and operation of the road. Testimony was received by the commissioners, and considered by them in making their award, tending to show the depreciation of the property caused by the noise, smoke and vibration, incident to the management of the trains the direction of the winds and to the state of the atmosphere, and also by the falling of ashes, dust and cinders, and the unsightly appearance of the structure itself.

*Held,* that it was error to allow any compensation for the damages arising from noise, smoke, vibration, ashes or dust, or the unsightly character of the structure.

That as it appeared that the access to Story's premises was in no way obstructed by the petitioner's road, it was error to allow or pay for any injury to that right.

That Story's compensation in this case should be limited to the damages occasioned to his easements of light and air by the erection of the petitioner's road and its use by the passage of its trains.

That the report of the commissioners should be reversed and a new hearing ordered.

Appeal by the New York Elevated Railroad Company from the appraisal and report of commissioners appointed to ascertain and

appraise the compensation to be made to Rufus Story, as the owner of, or person interested in, so much of the privilege, easement or other interest in Front street, belonging to said Rufus Story, or appurtinent to lots Nos. 7 and 9 on that street, as is taken by the petitioner for its use as an elevated railway company.

*H. H. Anderson, William B. Hornblower, Julian T. Davies* and *Edward S. Rapallo,* for the Elevated Railroad Company, appellant.

*John E. Parsons,* for the respondent, Joseph Story.

DANIELS, J. :

The elevated railroad of the petitioner was constructed and has since been operated in Front street, under the authority of chapter 606 of the Laws of 1875. It was evidently then supposed that the railroad company had the right to locate and construct its railway in this street under the authority of this act, without compensating the owners whose property abutted upon the street, for any inconvenience it might occasion them, or any injury which they might afterwards sustain in the use and enjoyment of their property. But in *Story* v. *New York Elevated Railroad Company* (90 N. Y., 122) a different view of the law was established, and the railroad company was held to be liable for erecting and maintaining the structure in the street, so far as it interfered with the convenient use and enjoyment of the petitioner's property, or deprived him of the use of the light and air he might secure and obtain from the street unaffected and unobstructed by this structure, and it was to avoid further controversy as to this liability and to compensate the owner for what was held to be an unlawful interference with his rights that these proceedings were taken, and the award has been made by the commissioners. Their object was not to compensate the owner as the proprietor of land taken and appropriated by the company. And as the land upon which this street was constructed was appropriated to that object by the conveyances through which the owner derived his title, and it was to be maintained as a free and common passage and as public streets and ways for the inhabitants of the said city, and all others passing and returning through or by the same in such manner as the other streets of the same city are, or lawfully ought to be, he probably had no such interest

in, or title to, the street itself as entitled him to compensation for the use or appropriation of its surface. This was considered in *Story* v. *New York Elevated Railroad Company* (*supra*), but the point was not definitely decided, the case having been disposed of upon the right of the owner to uninterrupted access to and from his property, and to the free enjoyment of the light and the air, so far as that would be supplied without this obstruction erected over the street. He was held to be entitled to such access to and from the property owned and occupied by him, and to the use and enjoyment of the light and air so far as it might be supplied by the street, without interruption from the structure of the company erected and used in it. And it was to divest him of this right in favor of the company that these proceedings were instituted and completed.

The structure was erected upon iron piers, placed in the sidewalk inside the curb line, with traverse girders extending across the street from the pier or column on one side to a corresponding pier or column on the other side, upon which were laid longitudinal girders, and on these the tracks of the railroad company were constructed. The structure is fifteen feet and one inch above the surface of the street, and rises from that height into the air nearly five feet, and the cars used upon the railway are about nine and a-half feet in height. The ties are six inches in width, having open spaces between them of about twelve inches, and they extend to within eleven feet and one-half inch of the front of this building, occupied and used by its owner to carry on his business as a dealer in spices. Neither of the piers nor columns is in front of his building. One was placed near the corner and the next in front of adjoining premises. The front of his store was therefore free from interruption or obstruction, having a height for its entire width of fifteen feet and one inch above the surface of the street. This was proved by evidence encountering no contradiction on the hearing, and, of course, the fact could not be changed by any observations which the commissioners themselves might, or did make, of the locality. By their report they first reported generally the compensation which they deemed it proper should be made to him, but upon the application of the railroad company a further report was required from them setting forth what they had considered to be ease-

ments, for which they had allowed damages in and by their first report. And in compliance with that they further reported :

*Second.* That the easement for which they allowed compensation in their report is the right or privilege of Mr. Story to have Front street, opposite his premises, kept open and unobstructed, and continued as a public street, for the benefit of his abutting property.

*Third.* That while on the original hearing before them the easements of light, air and access were the only ones considered, no testimony was given, nor have your commissioners any knowledge upon which these easements can be divided so as to attach values to each of them separately, or to so much of each of them as has been taken by the petitioner.

*Fourth.* That their personal observations satisfied your commissioners that the easements of light, air and access of Mr. Story's property were all seriously interfered with and impaired by the construction and operation of the petitioner's railroad in front of the property.

And by this fourth subdivision of their report the fact has been stated by them that the easement of light, air and access of Mr. Story's property were all seriously interfered with and impaired by the construction and operation of the railroad, and for that interference the compensation directed by them was intended to be required from the company. But as there evidently was no part of the structure which interfered with access to and from the store on Front street, no part of the compensation to be awarded to the owner could legally be made on that account. It was not shown, neither can it be perceived how the railroad structure could by any possibility interfere with the use and enjoyment of the access of himself, his customers or others, to and from the store. The uninterrupted space extending across its entire front of fifteen feet and one inch in height, would seem to be all that could be required for the convenient use and enjoyment of this right of access, and accordingly its obstruction should not have been included by the commissioners as a circumstance for which compensation should be made, for the fact itself on which the right to compensation depended appeared to be without existence.

The award made by the commissioners was of the sum of

$15,000, and it seems to have proceeded in its amount upon the
evidence of Mr. Story, the owner himself and two of his witnesses,
designating that to be the depreciation produced in the value of
his property by the construction and operation of the railroad.
The witnesses Martin and Coddington, in general language, men-
tioned the depreciation as one-half of the value of the property
without this structure in the street, but gave no figures expressive
of their valuation, and presented no criterion upon which their
estimated one-half might be reduced to figures. It was the other
witnesses who give the figures. They were the owner himself, who
placed the value of his property without the road at the sum of
$45,000, and stated its depreciation from the road to be one-third
of that amount or $15,000, and the witness Herrick, who con-
sidered the value of the property without the road to be from
$40,000 to $45,000, still placing the depreciation from the railroad
at the amount mentioned by the owner, while Duke, in general
terms, expressed his conviction to be that the rental value of the
property had been reduced to the extent of one-third. And from
the identity of the award with the figures given by these witnesses
the conclusion appears to be well warranted that the commissioners
followed their statements, in arriving at the sum mentioned by them
in their report. It is true that it appears that they observed the
premises themselves, but the result of their observation practically
was that they coincided with the conclusions of these witnesses, and
adopted the statement made by them as the basis on which their
award of compensation should be made. But in making these
statements the witnesses included disturbances and annoyances arising
out of the running of the trains themselves. They did not confine
themselves in their statements to what they might consider the
depreciation of the owner's property by the erection of the structure
and the mere passage of the trains over it, but included in addition
to those facts the noise, smoke and vibration incident to the man-
agement of the trains, the direction of the wind and the state of
the atmosphere, also the falling of ashes, dust and cinders and the
unsightly appearance of the structure itself. How much of the
one-third off in the rental value, or of the $15,000 mentioned by
Herrick and Story as the depreciation in value of the latter's
property, was, in their judgment, attributable to these, or either of

these incidental circumstances was not mentioned by either of the witnesses. And no estimate, therefore, can be made of the extent to which these facts may have influenced their judgment. That they did influence their judgment to some extent is manifested by the manner in which they gave their evidence upon the hearing. And as the commissioners adopted and followed their convictions concerning the extent of depreciation in the owner's property, they must necessarily be held to have included as part of their award the compensation which should be made on the basis of these incidental annoyances and objections. The question, therefore, arises whether these were matters of fact which the commissioners had the legal right to provide for by way of compensation to the owner of the property. It is reasonably clear that they include no proprietary right or interest taken from the owner, and it is only for the property taken from him for public use that compensation has been required to be made by section 6 of article 1 of the Constitution of the State. And in taking private property under the authority of the law for the construction of railroads, neither of these incidents have been considered to be a subject of constitutional compensation. If they were, then every person residing or doing business, so near the line of a railway as to be annoyed or disturbed by the smoke, noise, steam or ashes of a train, would have a legal right of action against the company for indemnity, but no action for that purpose has yet been sanctioned or maintained by the courts. Their judgment, on the contrary, where the point of liability has arisen, has been against the right to maintain a suit for the recovery of redress on that account. (*Briesen* v. *Long Island R. R. Co.*, 31 Hun, 112.) This street, as it was provided for in the deeds under which the present owner derived his title as they were made to appear in *Story* v. *New York Elevated Railroad Company* (*supra*), was to be maintained and used in such manner as the other streets of the city of New York then were or lawfully ought to be, and by that phraseology it was placed upon the same legal basis as the streets of the city have been generally maintained. And that required it to be held in trust as a street for the convenient use and enjoyment of the public; and it was subjected to such legislative control thereby as was not inconsistent with its use and maintenance as a public street. This subject was considered in *People* v.

*Kerr* (27 N. Y., 188), in reference to another street of the city required to be maintained and used in the same manner. And it was there held that the legislature had supreme control over the street, and might " change one kind of public use into another, so long as the property continues to be devoted to public use. What belongs to the public may be controlled and disposed of in any way which the public agents see fit; " and " that the power exists with the State legislature, without the consent or license of the municipal corporation, to so control the use of the public streets of the city as to authorize the construction of a railroad track therein on which city passengers may be transported for hire." (Id., 192, 214.) And this was sanctioned and followed in *Kellinger* v. *Forty-second Street Railroad Company* (50 N. Y., 206). And where this broad authority has been reserved to the legislature over a street, it has been considered to sustain legislative action authorizing the construction and maintenance of a railroad upon the surface of the street, whether it be propelled by steam or horse power. On this subject it has been declared as settled law that " where the original proprietor parts with the fee which is vested, by statutes in some of the States, in the public, or in the municipality for the use of the public, the courts concur in holding that the legislature may in such case authorize the street or highway to be used for a street railway, or even an ordinary railway, without his consent and without compensation to him." (2 Dil. on Mun. Corp. [2d ed.], § 574.) And this appears to be sustained by *Corey* v. *Buffalo, etc., Railroad Company* (23 Barb., 482); *Lexington, etc., Railroad Company* v. *Applegate* (8 Dana [Ky.], 289); *Atchison, etc., Railroad Company* v. *Garside* (10 Kan., 552); *Moses* v. *Pittsburgh, etc., Railroad Company* (21 Ill., 516); *Parrot* v. *Cincinnati, etc., Railroad Company* (10 Ohio St., 624); *Greene* v. *N. Y. Central, etc., Railroad Company* (65 How., 161); and *Barney* v. *Keokuk* (94 U. S., 324, 341).

Assuming that to have been the authority which the legislature possessed over this street, if a surface instead of an elevated railroad had been provided for, no constitutional right whatever would have existed on the part of the owner of this property, and he can claim no more than that, to compensation for annoyance or disturbance, created by smoke, noise, vibration, ashes dust or cinders, for

they would have been no more than incidental consequences resulting from the legal construction and maintenance of the railroad, and for such incidental consequences, where the business may be carried on with reasonable and proper care, no right of action exists on the part of the party complaining of such annoyances. (*Bellinger* v. *N. Y. Central, etc., R. R. Co.,* 23 N. Y., 42; *Gould* v. *Hudson River R. R. Co.,* 2 Seld., 522; *Matter of Union Village, etc., R. R. Co.,* 53 Barb., 457; *Porter* v. *North Missouri R. R. Co.,* 33 Mo., 128; *Murphy* v. *City of Chicago,* 29 Ill., 279, 286.) And building the railroad above the surface of the street will not render the company liable for these annoyances, when no such liability would have arisen if it had been laid upon the surface. But it is solely because of the fact that the railroad has been built above the street that the right of the owner of this property to compensation has arisen, and under the authorities determining the extent of that right these incidental disturbances and annoyances are not required to be included. It is true that a different rule was sanctioned *In Matter of Utica, etc., Railroad Company* (56 Barb., 456), but that case proceeded upon a departure from what had previously been, and has since also been, followed as the correct legal principle to be applied and observed. And upon this subject it has been very generally held that the extent of the owner's right is to be compensated for the property actually taken, and the reduction in value of the residue of his property by the fact of the taking of a part of it. That satisfies and includes all that is contained in the constitutional requirement. It is to compensate him for what may be taken from him under the authority of the Constitution and the law, and not to remunerate him for any incidental damages or annoyances afterwards arising from the use of the property itself, occasioned by want of care or skill on the part of the party taking and using the property, or by the direction or force of the wind or the state of the atmosphere. This was the rule adopted in *Troy and Boston Railroad Company* v. *Lee* (13 Barb., 169), and it was followed in *Canandaigua, etc., Railroad Company* v. *Payne* (16 id., 273); *Albany Northern Railroad Company* v. *Lansing* (Id., 69), and sanctioned and sustained by *Henderson* v. *New York Central Railroad Company* (78 N. Y., 423); *Matter of Union Village, etc., Railroad Company* (53 Barb., 457); *Albany and Susquehanna Rail-*

*road Company* v. *Dayton* (10 Abb. [N. S.], 183); *Taylor* v. *Metropolitan Elevated Railroad Company* (50 N. Y. Supr. Ct., 311, 333); *Black River, etc., Railroad Company* v. *Barnard* (9 Hun, 104), and *Matter of Boston Road* (27 id., 409). And it is in no manner in conflict with anything that was said or decided *In Matter of New York Central, etc., Railroad Company* (6 Hun, 149). These authorities all fail to sustain the decision made *In the Matter of Utica, etc., Railroad Company* (*supra*), and prescribe a rule to be observed and followed, excluding the right of the owner to compensation, because in the management of the business of the railroad constructed in front of his premises, their occupants may be disturbed by noise or the vibration of the building, or annoyed by smoke, ashes, dust, steam or cinders, or by the unsightly appearance of the structure itself.

If it was within the authority of the legislature to provide a surface road for this street, and it had been so provided and built, neither of these incidental annoyances would have been the subject of action or compensation, for they included no taking or appropriation of the property of the abutting owners on the street. And it is only for the taking and appropriation of property that the Constitution has required compensation to be made. Beyond the constitutional necessity for compensation the subject has been wholly committed to, and is within the rightful authority and regulation of, the legislature of the State. And as these annoyances could not legally, in the absence of specific legislation to that effect, be required to be made the subject of compensation in the case of a surface railroad, it seems to follow that they should in like manner be excluded as items of compensation in the present case. And that exclusion is sanctioned by the other authorities declaratory of the compensation to be made to the owner whose property in any form may be appropriated to the purposes and uses of a railway. The property of the present owner, so far as it may be appropriated and used, has been defined to be his easements in the street affording to his premises the ordinary means of access, and the light and air they would receive, and its occupants enjoy, without this structure and its permanent use in the passage of railroad trains. That is the utmost extent to which his right to compensation has been sustained by the authority already

referred to determining these points against the company. And as the means of access to and from the premises have not been impeded or obstructed by the structure, he was not entitled to be compensated for any impairment of that right. But his right to compensation is to be limited to the easements of light and air, the former of which, according to the evidence, has the most seriously been interfered with. The point to be determined by the commissioners is the difference in the value of the plaintiff's property abutting upon the street produced by the construction of the railway and the passage of the trains upon it. The former is alleged to have obscured the passage of light into his building, while the latter disturbs it by producing a flickering appearance. So far as his premises have been reduced in value by these facts, when the evidence shall prove their existence, as it already has, to the satisfaction of the commissioners, he is entitled to compensation. And so he will be from either the structure, or the motion of the trains disturbing or obstructing the passage and circulation of air to and from his premises. And, as the case has now been presented, that seems to be the utmost extent to which the commissioners had the right to make their award. And that does not include the incidental disturbances and annoyances mentioned by the witnesses as entering into their calculation of the reduction in value of the plaintiff's property, or justify the allowance for them by the commissioners. As these incidents are not permanent, but accidental, depending on the force and direction of the wind and the state of the atmosphere; and as their report is identical in its amount with the figures mentioned by the witnesses, including in part these incidental annoyances, it is to be presumed that the commissioners have awarded a portion of the compensation mentioned in their report on this account. That violated the legal principle required to be observed and applied by them in ascertaining the amount and extent of compensation. And this error, as well as that first mentioned, will not only justify but require that the report shall be set aside and a further hearing be had excluding these incidental disturbances from consideration. (*Matter of Boston Road*, 27 Hun, 409; *Matter of Lackawanna, etc., R. R. Co.* v. *Bennett*, not yet reported, but recently decided by the General Term of the Fifth Dept.; *Matter of N. Y., West Shore and B. R. R. Co.*, 29 Hun, 646.)

The award made should be reversed and set aside, and a further hearing of the matter should be ordered by the court.

DAVIS, P. J., and BRADY, J., concurred.

Award reversed and set aside and new hearing ordered.