Canandaigua and Niagara Falls Railroad Co. *v.* Payne.

[NIAGARA SPECIAL.TERM, June 6, 1853. *Harris*, Justice.]

# THE CANANDAIGUA AND NIAGARA FALLS RAILROAD COMPANY *vs.* PAYNE.

It is erroneous for appraisers appointed under the general railroad law, to determine the compensation to be made to the owner of land " for the damages occasioned *by the construction and operation of the railroad over his premises.*"

Their office is to determine the compensation to be made to the owner of the real estate "*proposed to be taken* for the purposes of the company."

They are to decide questions of present value, and not to speculate in respect to the probable consequences of constructing and operating a railroad.

The consequential injury which a mill, situated on a portion of land not taken, may be likely to sustain, from the construction and operation of the railroad, is a matter with which the commissioners have nothing to do.

Therefore they should not allow witnesses to give their conjectural opinions in respect to the damage which would result to the mill, from the construction of the railroad.

In such a case the proper inquiry for the commissioners is—not whether in case of the construction and operation of a railroad, it will endanger the owner's mill—but how the taking of the portions of land appropriated will affect the value of what is left; or, what is the fair marketable value of the whole property, and then what will be the fair marketable value of the property not taken; the difference being the true amount to be awarded.

APPEAL from the appraisal and report of commissioners. The respondent was the owner of four village lots in the village of Tonawanda, two of which were intersected by the line of the appellants' road. One of these lots fronted northerly on Tremont-street in said village, and in the rear was bounded by an alley. The track of the road passed diagonally through this lot,

leaving only a small triangular piece at the northeast and south-west corners of the lot. The other three lots were bounded northerly by the alley in the rear of the lot first mentioned, and fronted southerly upon Sweeney-street. A small triangular piece upon the northeast corner of one of these lots was also taken for the purposes of the railroad. Nearly opposite to these lots, and on the south side of Sweeney-street—between that street and the Tonawanda creek—stood a saw-mill owned by the respondent. The lots had been used for piling lumber and as a mill yard. Upon the hearing before the commissioners, the counsel for the appellants objected to the introduction of any proof as to damages occasioned to the mill, or other property of the respondent, and insisted that the testimony of the witnesses should be confined to the damages which would be sustained by the respondent by means of the appropriation of the lands described in the petition. A majority of the commissioners decided "that they would hear testimony as to the damages occasioned to the respondent by the location of the railroad along the highway in near proximity to his mill." Witnesses were then allowed to testify that the value of the property, including the mill and the four lots, was about $10,000, and that, after the railroad should be constructed, it would be reduced in value one half. The reason of the depreciation in value was stated to be the hazard of fire, the inconvenience in driving away customers, and in getting lumber to and from the mill. The lots were proved to be worth about $600 each.

Three of the commissioners united in a report that they "had ascertained and determined the compensation to be made to the parties owning or interested in the real estate aforesaid *for the damages occasioned by the construction and operation of the railroad of the said company over the said premises, to be* $5000."

*J. Ganson,* for the appellants.

*H. Rogers,* for the respondent.

Canandaigua and Niagara Falls Railroad Co. *v.* Payne.

Harris, J. The majority of the commissioners have obviously mistaken the duty assigned them. The 15th section of the railroad act authorizes the appointment of commissioners " to ascertain and appraise the compensation to be made to the owners or persons interested in the real estate *proposed to be taken* for the purposes of the company." And the next section requires the commissioners " to ascertain and determine the compensation which ought justly to be made by the company to the party or parties owning or interested *in the real estate appraised by them.*" Their office was to determine the compensation to be made to the owner of the real estate "*proposed to be taken,*" and to be " *appraised by them.*" Instead of this, they have determined the compensation to be made to the owner " *for the damages occasioned by the construction and operation of the railroad over his premises.*" In doing this, they transcended the authority conferred upon them. The result is an award of $5000, when the entire value of the two lots intersected by the road probably does not exceed $1200.

It may well be, that the effect of " the construction and operation" of the railroad will be as injurious as the witnesses have predicted. Whether it will be so or not, is as yet a matter of conjecture. Such conjectures cannot form a legitimate basis for awarding compensation.

The commissioners erred in allowing witnesses to give their conjectural opinions in respect to the damage which would result to the mill from the construction of the railroad. It was not a subject of inquiry; and if it had been, it would have been the business of the commissioners to form their own conjectures, and not to take the speculations of witnesses. (*See Troy and Boston Railroad Co.* v. *The President, &c. of The Northern Turnpike Company ;(a) also The Albany Northern Railroad Co.* v. *Lansing.(b)* In the latter case it was held that the commissioners were not confined in making their appraisal, to the actual value of the land to be taken, but were also to consider how *the taking* of the land would affect that *not taken.* In this case, the proper inquiry for the commissioners would

(*a*) Ante, p. 100.     (*b*) Ante, p. 68.

have been, not whether, in case of the construction and operation of a railroad, it would endanger the owner's mill, but how the taking of the portions of the lots described in the petition would affect the value of what was left; or, as the rule was stated in *The Troy and Boston Railroad Company* v. *Lee*, (13 *Barb.* 169,) what was the fair marketable value of the whole property, and then what would be the fair marketable value of the property not taken. The difference would give the true amount of compensation to be awarded. The value of the mill, either before or after the construction of the railroad, had nothing to do with the question, except so far as it might affect the value of the lots where the line of the road is located. The consequential injury which the mill might be likely to sustain from the construction and operation of the railroad was a matter with which the commissioners had nothing to do. Their business was to determine what compensation ought to be made by the company to the owner of the real estate they were called to appraise. They were to decide questions of present value, and not to speculate in respect to the probable consequences of constructing and operating a railroad. These are too uncertain to be made the subject of judicial inquiry.

It is obvious that the commissioners have entirely misapprehended the principles upon which they were to proceed in making their award. The report must, therefore, be set aside, and the case sent back to the same commissioners for a new appraisal.

[NIAGARA SPECIAL TERM, June 6, 1853. *Harris*, Justice,]