Sutherland, J., (dissenting.)
I am inclined to think the complaint in this action must be regarded as having been intended to contain two distinct causes of action: The first, *535 ejectment to recover the possession of the half of the street adjoining the plaintiffs’ buildings subject to the public easement ; and the second, to recover certain alleged special consequential damages to the plaintiffs, as abutting lot owners, resulting from the construction and operation of the railroad. These two causes of action, probably, could not properly be united in the same complaint (Smith v. Hallach, 8 How. Pr., 73; Hulce v. Thompson, 9 id., 113 ; Budd v. Bingham, 18 Barb., 494); but as there was no demurrer, and it does not appear that the plaintiffs were called upon at the circuit to elect between- the two, I suppose if, upon the facts of the case, the plaintiffs were entitled to recover on either cause of action, his complaint should not have been dismissed.
It will be noted, that the plaintiffs in their complaint do not complain of, or ask to recover for, any direct damage to them as the owners of the fee or soil of the street, to the middle of it, except from the alleged -withholding the possession.
It is doubtful whether the boundary of the dwelling house lots carries the plaintiffs’ title to the centre of the street, but I assume that it does, and that they own the naked fee of that portion of the street, which they seek to recover the possession of, subject to the public easement.
It is perfectly settled, if the defendant was authorized to construct and operate the road through Sixth street without acquiring the fee of the street, or making any compensation to the abutting lot owners, as owners of the fee of the street, that the defendant is not liable to the plaintiffs for the indirect or consequential damages claimed, unless the acts of the legislature, or the contract with the city authorities in pursuance of and under which the road was constructed, required compensation to be made for such indirect or consequential damages. (Lansing v. Smith, 4 Wend., 10; Gould v. Hudson River R. R. Co., 2 Seld., 522; Case of Phila, and Trenton R. R. Co., 6 Wharton, 25; State of Alabama v. Mayor, &c., of Mobile, 5 Porter, 279.) There is nothing in the case of Williams v. New Yorh Central Railroad Company (16 N. Y., 97), which interferes with this proposition.
*536 If the acts of the legislature, or the contracts with the city authorities, had enjoined'or made it a condition that the fee of the streets should be acquired, or the abutting lot owners compensated for such fee, before the road was constructed, the defendant would have been authorized to construct and operate the road without any compensation to the plaintiffs or other abutting lot owners for indirect or consequential damages, . and without being liable for such damages, upon fulfilling the condition, that is, upon acquiring the fee of the street, or making compensation to the abutting lot owners for such fee simply. (Radcliff’s Ex’rs v. The Mayor, &c., of Brooklyn, 4 Comst., 135; Canandaigua and Niagara Falls R. R. Co. v. Payne, 16 Barb., 273, Hatch v. Vermont Central R. R. Co., 25 Verm., 49; Clark v. Saybrook, 21 Conn., 213.)
The act of June 20, 1851, passed in contemplation of the organization of the defendant as a corporation under the general railroad act of 1850, appointed commissioners to locate the road, subject to the approval of a majority of all the members elected to the common council of Troy; and the road was located by the commissioners and their location thus approved; but there is nothing in this act requiring the fee of the streets to be acquired, or compensation to be made for the fee, or for such use of the streets, or for either direct or consequential damages, to the abutting lot owners.
By the 5th Subdivision of section 28 of the general railroad act (Laws of 1850, p. 224), under which the defendant was organized, corporations organized under it, were authorized to construct their road across, along, or upon, any stream of water, water-course, street, highway, &c.; but the company shall restore the stream or water-course, street, highway, &c., to its former state, or to such state as -not unnecessarily to have impaired its usefulness.
The same subdivision of section 28 declares that nothing in the act shall be construed “ to authorize the construction of any railroad not already located, in, upon, or across any streets in a city, without the assent of the corporation of such city.” This act does not expressly provide or require, that any com *537 pensation shall be made to any one for the use of a street or highway, or for any indirect or consequential damages; but it does provide, that any company formed under the act, should have the right to acquire title to any real estate, required for the purposes of its incorporation, in the manner prescribed in the act.
It cannot be doubted, I think, that the defendant was . authorized to construct and operate the road as it was constructed, and operated without acquiring the fee of the street, or making any compensation for such use of the streets, or for any indirect or consequential damages, if the legislature had the constitutional power to authorize such use of the'streets with the consent of the city corporation, without making or providing for such compensation.
The condition on which the city authorities gave their assent to the construction of the road, that it was not “ to interfere with the rights or claims of owners of property adjoining said road, to damages or otherwise, by reason of a change of grade,” &c., does not, I think, affect the question of power, or the rights of the plaintiffs. If the legislature, with the assent of the city authorities, could authorize the construction and operation of the road, without the consent of the plaintiffs, and without compensation to them, this condition could not subj'ect the defendant to liability for damages or otherwise.
. In the case of The People, &c., The Trustees of the Sailors' Snug Harbor, and others, v. The Mayor, &c., of the City of New York, John Kerr, and others, recently decided by the general term of the first judicial district, I had occasion to examine the question of the power of the legislature to authorize the construction and operation of a horse railway, through certain streets of the city of Hew York, conforming to the grade of streets, without the consent of the abutting lot owners, and without compensation to them for such use of the street, or for consequential damages, assuming the fee of the streets to be in such abutting lot owners; and after quite an elaborate examination of the question, I came to the conclusion that the , legislature had such power, on the ground that such use of the *538 streets was within the purpose for which they had been opened or dedicated to public use as highways, and that such new mode of using the streets for public travel or carrying passengers, was a use of the streets as highways, consistent with the public use for which they had been appropriated as highways; and, therefore, such new mode of using them could not be said to deprive such abutting lot owners of the fee of the streets, or of any private property, or possessory right of the street. For the reasons and authorities which led me to such conclusion, I refer to my opinion in that case.
There was a time, no doubt, in England, in the ancient days of the'common law, when no wagon or other wheel vehicles were in use. When they came in use, could the lord of the manor, or other owner of the fee of a public highway, have complained that wheel vehicles cut up or rutted the road, and that such use of the road was not contemplated when the highway was opened or dedicated to public use, was a highway ? . •
By the general railroad act, under which the defendant was organized, a corporation organized under it has power to take and convey persons and property on its road by the power or force of steam, or animals, or by any mechanical means, and to receive compensation therefor. (Subd. 7 of § 28.) Such power must be deemed granted for public use, and such operation of the road in carrying persons and property on it, to be for public úse. (Gen. R. R. Act, § 18; Bloodgood v. Mohawk and Hudson R. R. Co., 18 Wend., 10.)
In this case the railroad, I assume, was intended to be, and was operated by steam. I cannot see how that affects the question of power, although it is plain that, in a city, a road operated by steam would probably occasion much more serious consequential damage to the adjoining lot owners or occupiers, than a horse railroad.
¡Nor can I see how the raising the grade of the street affects the question of power in this case. I cannot doubt that the legislature had the power, with the consent of the city corporation, to raise the grade of the street twenty-five or thirty inches with *539 out compensation to the adjoining lot owners. It is to be pre- • sumed, I think, that the authorities of all cities, by their charters, have power, from time to time, to alter the grade of the street without making such compensation. If the street was raised four inches higher than it ought to have been, of which there appears to be some question, .1 think that was a matter between the city corporation and the defendant. It is plain, that the only damages which the plaintiffs have suffered by the construction and operation of the road, are indirect or consequential damages: that they really have not suffered any direct damage simply as owners of the fee of the street, or of a portion of the street; that the injury to them would have been precisely the same, if their title had not extended to the centre of the street, or the fee of the street had been in the city corporation. The case shows that the consequential damages to the plaintiffs have been serious; but the cases before cited, and many others which might be cited, have established the doctrine that the constitutional prohibition of taking private property for public use without compensation, does not extend to or protect a citizen from such indirect consequential damages.
My conclusion is, that the defendant was authorized to construct and operate the road. If so, it follows that the complaint was rightly dismissed.
In coming to this conclusion, I have assumed, that the plaintiffs owned the soil to the centre of the street, and could maintain ejectment for that portion of the street, which they seek to recover the possession of, subject to the public easement of a highway, if the construction of the road had been unauthorized. But I do not think ejectment would lie, if the road was constructed and operated without authority. It is not necessary to question that trespass would. It does not follow that ejectment would lie because trespass would. In constructing the railroad, the defendant did not claim any title in or to the streets. The occupation of the streets by the defendants in constructing and operating the road, if it can be called an occupation, was not. exclusive, and did not even prima facia *540 show, that the defendant claimed any title. Upon the theory, that the plaintiffs owned the soil to the middle of the street, the defendant only claimed a right of way or easement over their laud. The defendant did not occupy or claim title, so as to be properly made a defendant in an action of ejectment. (Child v. Chapel, 5 Seld., 246; Redfield v. Utica and Syracuse R. R. Co., 25 Barb., 54.)
The action to have possession delivered, subject to the public easement of a highway, is inconsistent with the form of the judgment, and of the writ of possession prescribed by the Revised Statutes (2 R. S., p. 808, §§ 33, 34); and with the sections declaring the effect of the judgment. (2 R. S., p. 309, §§ 36, 37.) To allow the action would be useless; for I cannot see, if a recovery is had, that any other result can follow from the judgment than the abatement of a nuisance, and in such a case as this, the half of a nuisance, which could be abated without the action.
There are other difficulties and inconsistencies in allowing ejectment to be maintained in such case as this, for which see Judge Allen’s opinion in Redfield v. Utica and Syracuse Railroad Company, before cited.
It is certainly doubtful, where there is an exclusive occupation of a portion of a public square, or highway, as by erecting a building or other structure upon it whether ejectment will lie by the owner of the soil, to recover the. possession subject to the public easement of a highway. On the authority of Goodlittle v. Alker (1 Burr., 143), and on the ground that trespass would lie, it was held in Pomeroy v. Mills (3 Verm., 279), and in Robbins v. The Mayor of Pittsburgh (3 Rand., 568), that ejectment would lie, for such an exclusive occupation; but it was held otherwise in The City of Cincinnati v. Lessee of White (6 Pet., 431), which decision was followed by the Supreme Court of this State, in the case of Hunter v. Lessees of Sandy Hill (6 Hill, 407), Judge Beardsley delivering the opinion. See also opinion of Ingersoll, J., in Peck v. Smith (1 Conn., 103); and of Willard, J., in Adams v. Saratoga and Washington Railroad Co. (11 Barb., 451, 453, 455.)
*541 My conclusion is, that the judgment of the Supreme Court should be affirmed, with costs.
Wright, J., also dissented; Gould, J., took no part in the decision.
Judgment reversed, and new trial ordered.