## SUPREME COURT.

In the Matter of the Application of the HARTFORD AND CONNECTICUT WESTERN RAILROAD COMPANY for a commission to value lands for railroad purposes.

*Railroad — Condemnation of land for railroad purposes — What interest or estate in property can or must a railroad corporation acquire by condemnation under the statutes.*

Under the general railroad act of this state, a corporation, by proceedings thereunder, does not acquire the fee of the land condemned, but only the right of "use * * * for the purposes of its incorporation during the continuance of its corporate existence." Its acquisitions must therefore be limited to its corporate needs; and an objection to a petition asking for a commission to appraise property needed for the

location of a railway, that it specifies only the surface use thereof as that to be acquired — the description being drawn in that form to avoid the payment for iron ore supposed to be below the surface — is not well taken, and must be overruled.

*Ulster Special Term, January,* 1883.

*Peter Cantine,* for application.

*G. Tillotson* and *H. G. Wollcott,* for Weed Iron and Mining Company.

WESTBROOK, *J.*— The principal objection made to the granting of the petition is this: Below the surface of the ground over which the railway is to be constructed is supposed to be a bed of iron ore. The railroad company, by its petition, does not ask to take, with the surface strip of land, the use of which it seeks to acquire, the title to the center of the earth, but only so much and so far beneath the surface as will leave the road bed solid and firm, and to the remainder of the land beneath such surface it seeks to acquire no title. The object of framing the petition in this form is to prevent the railroad company from acquiring title to or the right to use any part of the ore bed, which it does not need, and which is supposed to be valuable to the owners.

The owners of the land insist that the company must acquire title to the whole strip downwards and upwards, so far as the title of the owners may extend in either direction, and that less than this cannot be taken. They, therefore, resist the application for a commission, and ask that the proceedings be dismissed. The question, what interest or estate in property can or must a railroad corporation acquire by condemnation under the statute?—which the objection presents, is an important one, and, as it is not settled in this state by a direct adjudication, must be answered by the statute itself, and established principles of law.

The general railroad act (*chap.* 140, *Laws of* 1850, *sec.* 14), under which this application is made, provides that the peti-

Matter of Hartford and Connecticut Western Railroad Co.

tion "must contain a description of the real estate, which the company seeks to acquire." The commissioners appointed (*sec.* 15) are "to ascertain and appraise the compensation to be made to the owners or persons interested in the real estate proposed to be taken," and when the report is made and confirmed, and the sum awarded paid (*sec.* 18), "the company shall be entitled to enter upon, take possession of, and use the said land for the purposes of its incorporation, during the continuance of its corporate existence, by virtue of this or any other act; and all persons who have been made parties to the proceedings shall be divested and barred of all right, estate, and interest in such real estate, during the corporate existence of the company as aforesaid."

It will be observed that the company is to describe "the real estate" it seeks to condemn, and that it cannot acquire such property in fee, but simply to "use * * * for the purposes of its incorporation during its corporate existence," and that the owners are barred of their "rights, estate and interest" therein only "during the corporate existence of the company." It may, therefore, very properly be asked, as a railroad company can only acquire land to "use * * * for the purposes of its incorporation," and when acquired, can only hold it during its corporate life, why should it be compelled to take that which it does not need, and which it cannot possibly use? Why, also, may it not limit the extent of its acquisition beneath the surface, as well as that upon the surface? The corporation acquiring land is not bound to take all that the owner has upon the surface, and no reason is known why it should be forced to take all that the owner has below the surface. If the objection made to the petition in this matter is maintainable, a corporation will be oftentimes compelled to acquire property which it does not need, and very frequently owners of real estate will be compelled to part with that which they actually desire to retain, and which when acquired by the company would be of no use to it. A construction of the statute involving such consequences

should not be adopted if it can be reasonably avoided. On the contrary, the old maxim, "An argument drawn from inconvenience is forcible in law," should be observed, "unless it is very clear that violence would be done to the language of the act by adopting any other construction." (*Broom's Legal Maxims*, 184, 185, 186.) When a law, as that of 1850 certainly does, limits the right of the applicant in the condemnation of property to its actual needs in doing that which it was organized to do, and when it must specify that, and only that in its petition, it is difficult to see how its words are tortured or strained by holding, as is now held, that a railroad corporation desiring to build its road upon the surface of the earth, and having no need of that which is below, cannot be compelled to acquire and to pay for ore far below such surface, which to it is of no value whatever. Instead of doing violence to the language of the statute, upon which the present application is founded, by overruling the objection made to it, it seems clear to me that such ruling is sustained by its words, by its evident intent, and by every consideration of sound public policy. If, in the present case, it is the interest of the owners of the land to force upon the railroad company its ore bed, it should be remembered, that not only will injustice be thereby done to the corporation, but in so doing a principle will be adopted which will oftentimes force from the owner that with which he is unwilling to part, and compel corporations, in order to utilize property acquired, to embark in operations foreign to their incorporation, and for which they are not legally organized.

Allusion has already been made to the fact, that by the act under which the application has been made, the petitioner does not acquire the fee of the land, but only the right of "use * * for the purposes of its incorporation during the period of its corporate existence" (*Chap.* 140, *Laws of* 1850, *sec.* 18). This proceeding, therefore, when conducted to a termination, will not give to the railroad corporation any title to the iron ore below the surface of the ground (*Blake* agt.

*Rich*, 34 *N. H.*, 282; *Lyon* agt. *Gormely*, 53 *Penn.*, 261); and as it would not, and as also the company only needs the use of the surface of the land, there does not seem to be any valid objection to the framing of the petition in such form as will limit the acquisition of the corporation to such surface use, and thus prevent the allowance to the owners of compensation for that which the former does not need, and the title to which it cannot acquire. In fact, the wording of the petition in the form employed is necessary to carry out a general principle of the law stated by judge COOLEY in his work on "constitutional limitations" (see page 557), that when property is taken from the owner under the right of eminent domain, "that the right being based on necessity" it "cannot be any broader than the necessity which supports it," and that the owner "should not be altogether excluded, but should be allowed to occupy for his private purposes to any extent not inconsistent with the public use."

It is said, however, that *Hill* agt. *The Mohawk and Hudson Railroad Company* (5 *Denio*, 206; 7 *N. Y.*, 152) decides that the fee·simple of the land to the center of the earth must be acquired. This is a mistake; it decides no such proposition. The vice of the award, in that case, was that it did not give to the owners the full value of the land sought to be condemned, but lessened such value by granting to the owners the privilege of a way across the property actually taken.

The distinction between that case and the present one is, that while in the proceeding referred to the attempt was made to give the owner a way over the premises which the railroad endeavored to take, in this it is not proposed that the owner·of the land shall have any rights in that which is taken, but the property sought to be acquired stops short of that which is reserved to the owner. In other words, the railroad company will not acquire by this proceeding any right to the mines below the surface, and consequently nothing is reserved to the owner in that which is actually condemned.

Neither do *Canandaigua and Niagara Falls Railroad Company* agt. *Payne* (16 *Barb.*, 273), and the *Troy and Boston Railroad Company* agt. *Lee* (13 *Barb.*, 169), decide any principle adverse to the present petition. They do decide that the property "proposed to be taken" must be valued, and that such value cannot be swelled by considerations of inconvenience to the owners flowing from subsequent operations of the railroad, but they do not decide that the company must take more land than it needs, nor that the owner can be deprived of that which he may wish to retain, and which can be of no benefit to the company for the purposes of its incorporation.

For the reasons which have been stated the objection must be overruled and the commission asked for awarded.