(86 App. Div. 55.)

### SOUTH BUFFALO RY. CO. v. KIRKOVER et al.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1903.)

1. CONDEMNATION PROCEEDINGS—MEASURE OF DAMAGES—DAMAGE TO PROPERTY NOT TAKEN—USE TO WHICH PROPERTY TAKEN IS PUT.

In condemnation proceedings by a railroad, where only a part of defendant's land is taken, the measure of damages is the market value of the premises taken, without deduction for actual or supposed benefits to the land not taken, together with compensation for injury resulting to the premises not taken by reason of the use to which the property taken is to be put, such as obstruction of view, and subjection to smoke, dust, and cinders from passing trains.

Williams, J., dissenting.

Appeal from Special Term, Erie County.

Condemnation proceedings by the South Buffalo Railway Company against Henry B. Kirkover and others. From a final order confirming an award of commissioners, plaintiff appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

John G. Milburn, for appellant.
Wilson S. Bissell and James McC. Mitchell, for respondents.

McLENNAN, J. No question is presented for review except as to the amount of the award, and as to the reception by the com-

¶ 1. See Eminent Domain, vol. 18, Cent. Dig. §§ 245, 278, 279, 385.

missioners of certain evidence which it is claimed was incompetent
and was prejudicial to the appellant.

The report or award of the commissioners which assumed to fix
the compensation to which the defendants are entitled, so far as it is
important to note, is as follows:

"To Henry D. Kirkover and Emma J. Kirkover, his wife, and Henry Koons,
as and for compensation for the lands and premises aforesaid which are ac-
tually taken in this action or proceeding, the sum of ten thousand five hun-
dred dollars ($10,500.00), and as compensation for the damages to the re-
mainder of the parcel of land owned by said defendants out of which the
lands and premises described in said petition and order are taken, excluding
therefrom, however, by consent of counsel for defendants, such portion of
said lands as lie to the north and east of the right of way and lands and
tracks of the Buffalo, Rochester & Pittsburg Railway Company, as shown
upon the maps and exhibits offered and received in evidence, caused by the
taking of the parcel of land described in this proceeding and the use thereof
for railroad purposes, in the manner and to the extent shown by the evidence
and proceedings aforesaid, the sum of forty-one thousand five hundred dol-
lars ($41,500.00), making a total appraisal and award to said defendant land-
owners of the sum of fifty-two thousand dollars ($52,000), as the compensation
which ought justly to be made by the plaintiff to the owners of the property
appraised by your commissioners herein.

"At the request of counsel for the defendants, we do further separately
report, that in fixing and determining such compensation and award, your
commissioners have taken into consideration the question whether the lands
and premises of said defendants, not taken in this proceeding aforesaid,
have been in any way damaged and depreciated in value by the construction
and use and operation of the railroad of the plaintiff adjoining the lands of
said defendants and beyond the boundary lines of the parcel taken herein,
and they find and have determined that said lands and premises of said de-
fendants not taken have not been, and will not be, in any way thereby dam-
aged or depreciated; and at the request of counsel for plaintiff they have
also taken into consideration the question as to whether any allowance or
deduction should be made from said compensation on account of any real
or supposed benefits which the defendant landowners have derived, or may
derive, from the public use for which the property aforesaid is taken, or
the construction of any proposed improvement connected with such public
use, and they find and have determined that no such allowance or deduction
should be made on account thereof, because there are no such and will be
no such real or supposed benefits derived by the landowners from such public
use of the property taken, or the construction of any proposed improvement
connected with such public use."

The premises in question consisted of a tract of vacant land, situ-
ate in the southerly part of the city of Buffalo, comprising 69 acres.
It was bounded on the westerly side by the Western New York &
Pennsylvania Railway, New York, Chicago & St. Louis Railway,
Erie Railroad, and Lake Shore & Michigan Southern Railroad,
and on the easterly side by the Buffalo, Rochester & Pittsburg Rail-
road, each of which railroads was being operated upon an embank-
ment several feet above the surface of the adjacent lands.   By this
proceeding the plaintiff sought to acquire, for the purposes of its
railroad, 7.086 acres of said premises, being the northwesterly corner
of the tract.   The evidence, which is voluminous, with great accuracy
described the entire tract, its contour, elevation, location, and sur-
roundings, its accessibility from existing highways and other contem-
plated streets, the use or purpose to which it is adapted, and its value
for the same.   The portion of the premises proposed to be taken

by the plaintiff is also minutely described, and its situation or location with reference to the rest of the tract, the manner in which it is proposed by the plaintiff to use such portion, the fact that the tracks of the plaintiff are to be elevated, the extent of such elevation, that the cars and engines are to be operated by steam; in fact, the evidence presented a picture of the situation as it would exist after the construction of plaintiff's railroad as contemplated or intended by it, and by consent, the plaintiff having been given possession of the premises, and having constructed and put in operation its railroad prior to the hearing, the commissioners were enabled to see the conditions as they actually existed, and observe the consequences resulting therefrom. The commission, after hearing all the evidence and after viewing the premises, determined that the value of the land actually taken was $10,500, and that the damages resulting to the portion not taken, by reason of taking the seven acres and the construction and operation of plaintiff's railroad thereon, was the sum of $41,000; and that therefore the defendants were entitled to the award, viz., $52,000.

It would not be useful to call attention specifically to the evidence which formed the basis for such award. It is sufficient to say that nine witnesses called by the defendants placed the damages sustained on account of the taking of the seven acres for plaintiff's use, and the damages resulting to the remainder of the tract by such use, at from $78,750 to $104,499, the average of the amounts as estimated by such witnesses being $94,435. The amounts fixed by the witnesses called by the plaintiff were much smaller, and their average much less than the award. The commissioners were leading citizens of the city of Buffalo, men of judgment and experience, and it is not suggested that their award did not represent their honest and best judgment.

By a considerable amount of the evidence adduced by the respondents it was sought to establish that, as a result of the construction and operation of the appellant's railroad upon the portion of the premises taken, the view from the remaining portion would be obstructed; that it would be subjected to great quantities of smoke, dust, and cinders from passing engines and trains, all of which would greatly damage the remaining property; and it was insisted that such elements of damage should be taken into consideration by the commissioners in fixing the amount of the award. As stated by appellant's counsel in his brief:

"The position of the respondents on the hearing before the appraisal commission was that they are entitled to an award equal to the difference between the market value of the entire sixty-nine acres before the construction of the railroad, and the market value of the remaining portion after the construction of the railroad; and that, in determining the depreciation of the sixty-two acres remaining, the commissioners should take into consideration the effect, upon said remaining parcel, of the operation of this railroad over the lands taken, of the blowing of smoke thereover from the locomotives and the consequent settling of cinders thereon, and the obstruction to the view from said premises caused by the embankment upon which said railroad has been constructed; and that such elements should be considered as to the construction and operation of said road to the west of said premises, as well as on the premises taken."

From the form of the award, the character of the evidence received over appellant's objections, and the course of procedure pursued upon the hearing, there can be no doubt that such was respondents' position, and that such items of damage were considered by and regarded as potential by the commissioners in determining the amount of the award, and, if the commissioners were not entitled to take into consideration the facts which such evidence tended to establish, the award ought not, in fairness, to stand.   We are thus led at the outset to inquire what is the correct rule by which to determine the amount of compensation to which the respondents are entitled.   We think the true rule, and the one which is sustained by authority, is stated by Wood on Railroads, § 259, as follows:

"When the whole of a person's land is taken by proceedings in invitum, the market value of the land at the time of the taking is the true measure of compensation; but when only a part of the land is taken, the compensation to be given should be assessed, not only with reference to the market value of the land taken, but also with reference to the injurious effects upon the part not taken, and the deterioration in the value of the whole lot.   The real inquiry is, what was the fair market value of the land before the taking, and what is its fair market value since the taking, in view of the uses to which the land is or might be devoted, and the uses to which it is to be put under the taking, and the probable effect of such use upon the value of the land remaining?   And the difference is the proper measure of compensation."

The same rule is stated in Lewis on Eminent Domain, § 471:

"When part of a tract is taken, just compensation would therefore consist of the value of the part taken and damages to the remainder, less any special benefits to such remainder by reason of the taking and use of the part for the purpose proposed."

This measure of compensation was expressly approved in Henderson v. N. Y. C. R. R. Co., 78 N. Y. 423, the headnote of which is as follows:

"It seems that, in proceedings by a railroad corporation to acquire a right to lay its tracks in a street or highway the fee of which is in the owner of the adjoining land, the proper compensation is:  First. The full value of the land taken.   Second. A fair and adequate compensation for all the injury the owner has sustained and will sustain by the making of the railroad over his land;  and for this purpose it is proper to ascertain and determine the effect the conversion of the street into a railroad track will have upon the residue of the owner's land."

In Newman v. M. E. R. Co., 118 N. Y. 618, 23 N. E. 901, 7 L. R. A. 289, the court said, at page 524:

"The first element in the award represents the compensation for land which the railroad takes, and to which it acquires title.   The second element represents damages which are the result or consequences of the construction of the road upon property not taken, and which the owner still retains.   Such damages are wholly consequential, and to ascertain them necessarily involves an inquiry into the effect of the road upon the property, and a consideration of all the advantages and disadvantages resulting and to result therefrom."

In Bohm et al. v. M. E. R. Co. et al., 129 N. Y. 576, 29 N. E. 802, 14 L. R. A. 344 (at page 585, 129 N. Y., page 804, 29 N. E., 14 L. R. A. 344), the court said, per Peckham, J.:

"Generally, in taking land, the rule may be said to be to pay the full value of the land taken at its market price, and no deductions can be made from that value for any purpose whatever. Then, as to the land remaining, the question has been to some extent mooted whether the company should pay for the injury caused to such land by the mere taking of the other property, or whether, in case the proposed use of the property taken would depreciate the value of that which was not taken, such proposed use could be regarded, and the depreciation arising therefrom be awarded as part of the consequential damages suffered from the taking. I think the latter is the true rule. Henderson v. N. Y. C. R. R. Co., 78 N. Y. 423, 433; Newman v. R. R., 118 N. Y. 618, 23 N. E. 901, 7 L. R. A. 289; In re Petition Brooklyn R. R., 55 Hun, 165, 167, 8 N. Y. Supp. 78. The case of In re Petition N. Y. Elevated R. R., etc., 36 Hun, 427, is cited for the other rule."

The general rule applicable to the ascertainment of the damages to which a landowner is entitled by reason of the taking of a portion of his premises by a railroad company under the power of eminent domain has been stated with substantial uniformity by the courts and text-writers for more than half a century. In Troy & Boston R. R. Co. v. Lee, 13 Barb. 169 (decided more than 50 years ago), it was said:

"The proper inquiry is, what is the entire property now fairly worth in the market, and what will that part not taken be worth after the improvement is made?"

There has been some conflict, however, in the decisions as to the interpretation or meaning of the rule. In the earlier cases (Canandaigua & Niagara Falls R. R. Co. v. Payne, 16 Barb. 273; Albany Northern R. R. Co. v. Lansing, 16 Barb. 68; Troy & Boston R. R. Co. v. Northern Turnpike Co., 16 Barb. 106; Union Village of Johnsville R. R. Co. v. Aikin, 53 Barb. 457) cited by appellant's counsel, it was held, in effect, that a railroad company which, by condemnation proceedings, sought to acquire only a portion of a landowner's premises, was only liable to pay the value of the land taken, and the damages sustained by reason of the division of the whole property or tract, or by reason of the fact that by such taking the remaining property was less accessible; at least, it was held that the use to which the portion of the property taken was to be put, and the damages resulting in consequence of such use, could not be considered. The force and scope of those decisions are aptly illustrated in Albany Northern Railroad Company v. Lansing, supra, where the court said (at page 71):

"They [the commissioners] were to consider how the taking of the land, but not the use of it in any particular mode, would affect the residue of the owner's land. Would it leave that residue in an inconvenient, unmarketable shape? If so, this fact might properly be taken into the account in determining the amount of compensation. Thus, if the land to be taken should lie between the owner's house and the highway, the amount of compensation should be vastly more than for the same quantity of land equally valuable in itself, but situated in some remote part of the owner's premises. The commissioners, therefore, were right when they decided that they would include, in the compensation for the land to be taken, 'damages to the adjacent land by reason of such taking.' But the fact that the land to be taken would be used for a railroad, rather than any other lawful business, formed no part of the materials out of which the award was to be made. Whether the land taken was to be used for a railroad or a garden was a question, so far as compensation was concerned, with which the commissioners had nothing to do. Their duty was to award compensation for the taking of the land, and not for the use to which it should be applied when taken."

The cases referred to were overruled, and the doctrine enunciated was expressly repudiated, in Matter of Utica Railroad Co., 56 Barb. 456. In the headnote in that case it is said:

"But when land is taken for the construction of a railroad without the consent of the owner, the compensation to be paid therefor is not limited to the actual value of the land taken and to the depreciation of the residue ·of the lot from which it is taken by such separation, but the owner is entitled to recover also for any depreciation caused by the use to which it is appropriated."

The question was again considered by the General Term of the Fourth Department in Matter of New York, Lackawanna & Western Railway Co., 29 Hun, 1, and again the cases referred to and cited by appellant's counsel were expressly overruled, and the case of Matter of Utica R. R. Co., supra, was cited with approval. The court said, per Smith, J. (page 3):

"Thus it was held in some of the earlier cases that the commissioners ·are to consider how the taking of the land, not how the use of it in any particular mode, will affect the residue of the owner's land. Upon that view of the matter, evidence was offered by the landowner to show that the land not taken would be greatly depreciated in market value by reason of the part taken being used for railroad purposes; also that the buildings on the residue would be exposed to be set on fire by sparks from the engines, or would be less desirable as a place of residence or business by reason of their proximity to the railroad, was held to be conjectural and inadmissible."

It was held that those elements of damage were all proper to be ·considered by the commissioners. The court again said (at page 4):

"We are of the opinion, therefore, that the respondent was entitled to introduce any evidence that tended legitimately to show in what respect and to what extent, if any, the part of his land not taken would be injured by the use of the land taken for the purposes of a railroad; and we think, also, that in so doing he was not limited to the value of his land for ordinary farming purposes, but he might give evidence of its value for any other purpose to which it was adapted, including that of raising and training blooded horses and cattle, so far as it had been specially fitted for and appropriated to that use. His damages in those respects, ·caused by the construction and ·operation of a railroad through his land, were the direct consequence of the taking of his property for public use."

In Matter of N. Y. C. & H. R. R. R. Co., 15 Hun, 63, the same doctrine is enunciated. In that case (at page 69) the court said:

"If, by taking the land acquired, access to that remaining is more difficult ·and dangerous; if the land remaining is located in a city, and is valuable only to be built upon, and occupied as a dwelling or for business purposes, and is in such close proximity to the established tracks of the railroad that the jarring has affected the structures, and the smoke and noise rendered the remaining premises less valuable for use, from which it can be inferred that the same effect will be produced by the same cause in future—the market value of the remaining land would thereby be affected, and evidence showing these circumstances should have been received by the commissioners."

The decisions in the two cases last referred to were expressly approved by the Court of Appeals in Newman v. M. E. R. Co. and in Bohm v. M. E. R. Co., supra. So far as we have been able to dis- ·cover, the correctness of such rule has not since been questioned by the courts of this state, and must be regarded as settled. The rule is also reasonable. Any other might cause great injustice to a landowner a portion of whose property is taken against his will by a

.railroad company. If a portion of a man's land is taken for the pur-
pose of constructing a street surface railroad thereon at grade, to
be operated by electricity, it is apparent that the damages resulting
to the remaining portion from such construction and operation might
be much less than if upon the part taken there were to be constructed
tracks for the use of a steam railroad, elevated many feet above the
level of the adjacent property, and from the operation of which, nec-
essarily, smoke, cinders, and dust would be precipitated upon the re-
maining premises.

It is unnecessary to review the Elevated Railroad Cases, so called,
and determine whether or not the distinction sought to be made
by the able counsel for the appellant between those cases and a case
like the one at bar is well founded, because, under the decisions re-
ferred to, which relate to cases exactly like the one at bar, the com-
missioners in this case were required to take into consideration, in
fixing the amount of their award, the use to which the property taken
by the plaintiff was to be put, and how such use would affect the re-
maining property. As we have seen, the evidence upon that issue
was not speculative. The damages referred to by the witnesses were
such as would naturally and inevitably flow from the construction
and operation of plaintiff's railroad; and besides, the railroad having
been constructed and put in operation before the hearing, the com-
missioners were enabled to observe, and actually did see for them-
selves, how it affected the remaining part or portion of defendant's
premises.

The rule applicable to the measure of damages in a case where a
portion of a tract of land is sought to be acquired by condemnation
proceedings by a railroad corporation for its purposes may be stated
to be that the owner is entitled to recover the market value of the
premises actually taken by such railroad company, and any deduc-
tions on account of any actual or supposed benefits resulting to the
remaining property by reason of the construction and operation of
the proposed railroad may not be considered; but, in addition, such
landowner is entitled to recover any damages which resulted to the
portion of his premises not taken, not only by reason of the taking
of the property acquired by the railroad company, but also by reason
of the use to which such property was put by the railroad company.
In other words, that, if the remaining property was damaged by
reason of the fact that the portion taken by the railroad company was,
in the natural and ordinary course of events, to be used in such man-
ner that it would cause noise, vibration, and smoke, and the deposit
of dust and cinders upon the remaining property of such landowner,
such elements or conditions should properly be considered by com-
missioners appointed to determine the compensation which should be
paid to such landowner. Under the rule adverted to, all the evidence
received by the commissioners was competent and material, and in-
formed them as to the effect of the construction and operation of the
plaintiff's railroad upon the remaining portion of respondents' prem-
ises.

After examining all the evidence in the case we are led to con-
clude that it was sufficient to justify the award of the commissioners,

and that such award was not based upon any erroneous principles
as to the interpretation or meaning which should be given to such
evidence, or of the statute which authorizes the proceedings. It fol-
lows that the order appealed from should be affirmed, with costs.

Order affirmed, with costs. All concur, except WILLIAMS, J.,
who dissents.