THE SIXTH AVENUE RAILROAD COMPANY, RESPONDENT, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY AND THE MANHATTAN RAILWAY COMPANY, APPELLANTS.

*Vacant lot — injured by the construction of an elevated railroad — evidence as to what the lot would produce if buildings were built thereon, too speculative — proof as to injury done to other property, incompetent — evidence as to annoyance from misconduct of railroad employees.*

In an action brought to recover damages for the construction and operation of an elevated railroad in the city of New York, and to restrain the future use thereof, evidence was admitted on behalf of the plaintiff to show the possible uses to which the plaintiff's property might be put by the erection of expensive buildings upon it, and the amount of income which it might expect to derive from such improvements, and in regard to the inability of the plaintiff, by reason of the construction of the elevated railway, to make use of this property for these purposes.   Evidence was also admitted to show the manner and extent to which other property was alleged to have been injured by the construction and operation of this elevated railway.

*Held,* that the evidence so admitted was incompetent.

That the evidence as to what disposition might be made of the property was speculative.

That the evidence as to what injury had been sustained by other pieces of property opened an inquiry not within the issues of this action.

That the fact that other property had, or had not been injured, in no manner affected the right of the plaintiff to compensation for any injury done to its property.

Evidence was also admitted in relation to the misconduct of the men who were employed on the elevated railway, and in regard to other annoyances resulting from its operation, not affecting the light, air or approach to the property bounded upon the avenue, or relating to any disturbance or interference with it arising from the acts of the defendants, or the construction of the railway and stations, or their use or operation in the business of the railway itself.

*Held,* that such evidence was incompetent.

APPEAL by the defendants from a judgment entered, after a trial at a Special Term held in the county of New York, in the office of the clerk of the county of New York on the 3d day of May, 1889, except so much thereof as adjudges " that plaintiff recover of the defendants, the Metropolitan Elevated Railway Company and the Manhattan Railway Company, the sum of six cents damages."

*Edward C. James,* for the appellants.

*John E. Burrill* and *J. Archibald Murray,* for the respondent.

DANIELS, J.:

The action was brought for the conjoint object of recovering damages for the construction and operation of an elevated railway in Sixth avenue, in the city of New York, and for an injunction restraining the future use and operation of the railway. At the time when the railway was constructed the plaintiff was, and since then has been, the owner of a block of land on the easterly side of Sixth avenue, between Forty-third and Forty-fourth streets. This was, in part, occupied and used for a stable for its horses and for offices, and other purposes connected with its business. It was also, and has continued to be, the owner of a block of land fronting upon the same side of the avenue, between Fifty-eighth and Fifty-ninth streets, and extending easterly 100 feet from the avenue; and also a lot of land fronting upon the avenue and situated on the southerly corner of Fifty-eighth street. Neither this land nor that between Fifty-eighth and Fifty-ninth streets had been improved; and in their vicinity, and more especially in front of the land between Fifty-eighth and Fifty-ninth streets, the structure of the defendants

terminated on Sixth avenue. At that termination a station had been erected which, with the railroad structure, occupied the whole space above the surface of the street and a portion of the sidewalk. At this point the cars of the elevated railway were stationed when out of use; water was supplied to its engines, and the ashes accumulating therein were taken therefrom; and small buildings were erected upon the surface occupied by the defendants for other uses and conveniences of the defendants. This condition of affairs had continued in each of these localities from the time of the completion of the railway structure in or about the year 1878. But in the assessment and determination of the damages the plaintiff was held entitled to recover, for the injury which had accrued to its property, the allowance only of the sum of six cents; and that allowance has not been made the subject of complaint by either of the parties to the action.

But early in the progress of the trial it was stated by the defendants' counsel, in case the court should deem the action to be a proper one for an injunction, that then it would be requested to determine what sum might be paid to avoid the injunction. And it is as to the proceedings which took place, and the evidence which was given to enable the court to ascertain and determine this sum, that the complaint has been made as to the disposition of the action. It was proved as a fact that the light and air in this avenue, and the approach to and from the plaintiff's property, in front of which the station had been erected, was obstructed by the structure erected and maintained by the Metropolitan Elevated Railway Company and the other defendant as its lessee. And to avoid the issuing of an injunction restraining the use of the structure as a railway, and for these terminal purposes, it was adjudged that the defendants should pay the sum of $67,000 as a compensation for the depreciation of the plaintiff's property, caused by erecting, maintaining and using these structures in front of the plaintiff's land on the southerly corner of Fifty-eighth street, and upon the westerly side of the block between Fifty-eighth and Fifty-ninth streets; and that a further payment of the sum of $28,000 should be made to secure the right to maintain and operate the road in front of the plaintiff's property between Forty-third and Forty-fourth streets.

That relief of this description may be adjudged in this action,

follows from what was decided in the case of *Henderson* v. *New York Central Railroad Company* (78 N. Y., 423). And the correctness of that principle has not been denied by either of the parties to this action. But it has been objected that each of these sums was inordinately large, and beyond the amounts which were justified by the evidence, as a compensation to the plaintiff for the erection of this structure and its future use and operation as a railway in front of the plaintiff's premises. And the amounts allowed seem to be properly assailed in this manner.

That the plaintiff's property has been diminished in value by the construction and operation of the elevated railway in the avenue, is a fact, concerning which the evidence leaves no serious ground for doubt. And that the upper part of the structure where the railway terminates, and the station has been constructed and maintained, very seriously affects the value of the plaintiff's property situated in that vicinity, is equally as free from controversy. But the evidence which was taken in the case was not wholly directed to prove the difference between the value of these parcels of property without these railway structures in the avenue, and as they have been affected by the construction and maintenance of the elevated railway in this manner. That, as the rule has been announced and followed, would be the just criterion for ascertaining what sums of money should be paid to the plaintiff for this diminution in the value of its property. (*Matter of Utica, etc., R. R. Co.*, 56 Barb., 456.) And that, together with the damages already sustained by the plaintiff by reason of the construction and operation of the railway and the maintenance of the station, would be the relief the plaintiff was entitled to by way of fully determining the controversy presented by the action. (*Drucker* v. *Manhattan R. Co.*, 106 N. Y., 157.)

But upon the trial of the action this rule was allowed to be exceeded and transcended in the evidence which the plaintiff was permitted to give. For by the witness O'Reilly proof was taken as to the possible uses which might be made of the plaintiff's property by the erection of expensive buildings upon it, and the amount of income which might be expected to be derived from those improvements. And further evidence was taken as to the ability of the plaintiff to make use of its property for those objects. This evi-

dence was objected to as incompetent and irrelevant and immaterial, and also on the further ground that the witnesses were not competent to give his opinion on this subject. But the latter part of the objection is clearly not sustainable, for the reason that the witnesses who gave this evidence were shown to be competent to express their judgment upon the valuation of the property in dispute. Certainly the evidence went so far as to exclude this as a ground of error capable of being alleged in support of an appeal. (*Bedell* v. *Long Island R. R. Co.*, 44 N. Y., 367; *Slocovich* v. *Orient Mut. Ins. Co.*, 108 id., 56, 62.) As to the residue of the grounds of objection, it has been urged that they are insufficient to present the question of the inadmissibility of this testimony. But as the evidence which was given upon this subject was both irrelevant and incompetent by way of a direct-examination, the objections seem to be sufficient, although under other circumstances they might not be so, if the inti-mation contained in the decision of the case of *McGean* v. *Manhattan Railway Company* (27 N. Y. St. Rep., 337) is to be followed. The witness Fox, who was afterwards examined upon this capability of the use of the property, was asked to what it might be advantageously and economically devoted if the elevated railway were not there. And to this inquiry the further objection was added that it was speculative. And this latter objection did specifically indicate the ground on which his evidence should have been rejected, even if that was not disclosed by the other part of the objection. This was overruled and the defendants' counsel excepted. And the witness was allowed then to proceed and give evidence as to the uses which could be made of the property in very much the same manner, though with greater brevity, than the other witnesses who had been interrogated upon the same subject. If, therefore, the preceding objection was too general to be of service to the defendants, this additional objection to the taking of the same evidence from this witness relieved the case of that deficiency. For the evidence was speculative, and should not have been received, as it must be assumed to have been, to influence the action of the court in the disposition of so much of this controversy as required the amount to be determined which the defendants should pay for the continuation of the structure and the use of it as a railway. The evidence in this manner received was prejudicial to the defendants' rights, and

its introduction in the case may be assumed to have been the cause of the large allowances directed by the judgment to be paid by the defendants.

The plaintiff was also allowed to prove by the witnesses, Mead, Macy, O'Reilly and Waterlow, the manner and extent to which other property was deemed by them to have been injured by the construction and operation of this elevated railway. This property was in no manner connected with that owned by the plaintiff. It was situated upon the same avenue, but owned by other and different owners; and what injury had been sustained by these parcels of property in the construction and use of the railway had no possible connection with either piece of property owned by the plaintiff. This evidence was objected to by the defendants' counsel as immaterial, irrelevant and incompetent; and it very clearly was irrelevant to every inquiry included within the issues framed in this action; and the exceptions taken to the decisions of the court allowing this class of evidence to be given were well taken. What this evidence tended to prove was the injuries and losses sustained by other persons; and those injuries and losses may have been precisely what they were stated to have been, without in any manner advancing or affecting the right of the plaintiff to the compensation claimed in its behalf.

This evidence introduced into the controversy distinct and independent subjects, in no way, either directly or indirectly, relating to the issues in this action; and the exceptions which were taken to the decisions allowing it to be given appear, therefore, to be well founded. Other evidence was also given concerning the misconduct of the men who were employed in the service of the company, and to other annoyances resulting from the operations of the railway, not affecting the light, air or approach to the property bounded upon the avenue, or to any disturbance or interference with it raising from the acts of the defendants, or the construction of the railway and stations, or their use or operation in the business of the railway itself.

These rulings, and the evidence permitted to be given by them, affect the foundation upon which this judgment has been placed, and may well be supposed to have in part resulted in the very large allowances directed by the court to be paid to avoid the issuing of a permanent injunction.

It has been urged that the determination of the court fixing the amounts to be paid is not final upon the defendants, and that they may still proceed, under the statute of the State, to appropriate these easements to the uses and purposes of their railway, and for that reason the judgment itself is not appealable. The authorities which have been cited in support of this position have been consulted but not found to maintain this objection. But, on the contrary, title 4 of chapter 12 of the Code of Civil Procedure has provided generally for an appeal from a final judgment recovered at the Special Term, and this is such a judgment.

Upon the whole case this judgment should be reversed and a new trial ordered, with costs to the defendants to abide the event.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment reversed and new trial ordered, with costs to the defendants to abide the event.