### GALWAY *v.* METROPOLITAN EL. RY. CO. *et al.*

*(Supreme Court, General Term, First Department.   December 29, 1890.)*

1. EMINENT DOMAIN—COMPENSATION—ELEVATED RAILWAY STATIONS.
    Defendants constructed in the street in front of plaintiff's land an elevated railroad, on which they erected a station, nearly 25 feet of which was directly in front of part of plaintiff's property; the remainder extending beyond it, along the street. *Held,* that plaintiff might recover compensation, not only for the obstruction of light and air by the part of the structure in front of his land, but also for such injury by the adjacent portion of the structure.

2. SAME—EVIDENCE OF DAMAGES.
    In an action for such compensation, proof of the existence of posts or columns supporting part of the structure which is the subject of complaint is admissible, although they are not in front of plaintiff's property.

3. SAME.
    There is no substantial error in admitting evidence of the value of land adjoining and sustaining the same relation to defendants' structure as plaintiff's land, or general evidence of the manner in which property in the vicinity had been improved and occupied, or a photograph of a building on the corner directly opposite plaintiff's property.

4. SAME.
    The amount of the compensation awarded on trial by the court of such an action, upon a direct conflict of evidence as to the extent of the injury from defendants' structures, will not be held excessive, on appeal, where it is not inconsistent with the facts shown, and does not transcend the fair effect of the evidence.

Appeal from special term, New York county.

Action by James Galway against the Metropolitan Elevated Railway Company and the Manhattan Railway Company to restrain the operation of defendants' elevated railroad in front of plaintiff's property, and to recover damages for injury by the railroad to said property.   Defendants appeal from a judgment for plaintiff, entered on trial by the court without a jury.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Davies & Rapallo,* for appellants.   *Burrill, Zabriskie & Burrill,* (*John E. Burrill* and *J. Archibald Murray,* of counsel,) for respondent.

DANIELS, J.   The plaintiff is the owner of five lots of land on the easterly side of Sixth avenue, which is a street of the width of 100 feet in the

city of New York.   They extend northerly from Fifty-Seventh street 125 feet
5 inches.   He became the owner of the four northerly lots in 1868, and of
the lot upon the corner in 1871.   The Metropolitan Elevated Railway Com-
pany, under the authority of an act of the legislature of this state, erected an
elevated railway through the avenue, ending in the vicinity of Fifty-Ninth
street.   It went into operation in June, 1878.   At this termination of the
railway a station was constructed, extending from a point 24 feet 8 inches
south of the northerly line of the plaintiff's land for a distance along the av-
enue of 255 feet.   The structure of the railway itself, as well as of the station,
was 14 feet and 8 inches above the surface of the avenue, and it all extended
upwards a space of nearly 6 feet to the surface of three railway tracks, which
were constructed and operated in the business of the company.   At the sides
of the tracks, platforms were made and buildings erected to complete there-
with the passenger stations of the company.   This structure extended across
the surface of the traveled part of the street, and to the extent of a foot and
about two inches inside of the sidewalk, where it was in part sustained by
columns or pillars.   The upper surface of the structure was covered with
plank or boards, intercepting the passage of the light and the air.   And other
buildings, besides the rooms occupied as the station, were erected towards the
northerly termination of the structure.   Another building was erected south-
erly, extending to the distance already stated south of the northerly line of the
plaintiff's lots.   This building was one story in height, and used by the per-
sons in the employment of the railway company, as well as the others north-
erly of the station buildings, in the course of its management and business.
After this structure was in this manner erected the Metropolitan Railway
Company leased its road to the Manhattan Railway Company, the other de-
fendant, for the period of 999 years.   This lease was made in May, 1879; and
the structure, including the road, has been operated under its provisions since
that time, and maintained in this manner in front of the plaintiff's premises.
Southerly of the building, standing partly in front of the plaintiff's northerly
lot, was the structure of the railway itself, consisting there of the same three
tracks, and covered substantially in the same manner, with a walk on each
side, which extended the structure over the street for the distance of 38 feet,
and within 31 feet of the westerly line of these lots.   They were unimproved,
but it was alleged on behalf of the plaintiff that they had been depreciated in
value by these structures, and their use and operation in the business of the
railway company; and to obtain redress for that injury, and the restraint and
prevention of its continuance, were the objects for which the action was in-
stituted.

Evidence was given upon the trial to the effect that the value of these lots
had been greatly depreciated by the construction and use of the railways and
the station; and the court, under that evidence, held that the plaintiff's prop-
erty had been depreciated in value from these structures and their use as rail-
ways and station buildings to the extent of $20,000, and directed a judgment
restraining the further use of the property in this manner, unless the defend-
ants should pay to the plaintiff this sum of money upon receiving a convey-
ance or grant of the property of the plaintiff, and the easements appurtenant
to it, which had been appropriated by the defendants for the purpose of their
structure and railroad, as that had been authorized by law; and judgment to
that effect was entered upon the decision.   To support the appeal, the objec-
tion has been taken that the court, in its decision, required the defendants to
pay the plaintiff for the depreciated value of his property arising out of the
construction and maintenance of the station, and the buildings upon it, which
were northerly of the north line of his property.   But if this has been done,
as the fact was that the structure extended continuously from a point 24 feet
and 8 inches south of the northerly line of the plaintiff's lots, it would not
appear to include an erroneous allowance, if in truth and in fact the property

was injured by this extension of the structure over the surface of the avenue. In that respect there would be a manifest distinction between what was said in *Insurance Co.* v. *Stevens,* 101 N. Y. 411, 417, 5 N. E. Rep. 353; *Hier* v. *Railroad Co.,* 40 Hun, 310, and *Rummel* v. *Railroad Co.,* 9 N. Y. Supp. 404, and the present case, which is peculiarly distinguishable therefrom by the facts included in it.   For in those cases the obstruction complained of was so far distant from the property in question as not to be the source of any substantial injury to it; while in this case, if this continuous structure interfered with the passage of light and air to and from the plaintiff's property, remuneration for that injury, so far as that was the effect, would be due to him, under the well-settled principles which have become applicable to this class of cases.   But it is evident from the language of the decision which has been made that the court did no more than to include, or intend to include, compensation to the plaintiff for the loss or injury that had been sustained by the diminution in value of his lots by the structure immediately in front of them, and adjacent to them.   A full and minute description of this entire structure, extending from Fifty-Seventh street to near Fifty-Ninth street upon Sixth avenue, is contained in the decision as facts found by the court; and so is the manner and use to which the property has been devoted, not only as a station, but as a terminus of the road, and in the passage and repassage of trains upon the railway track.   And then, in the further finding upon which this allegation of error has been based, the court has added: "*Tenth.* That said several acts and doings of the defendants hereinabove described and complained of have been without right or authority, and without the consent of this plaintiff; and said defendants have in manner aforesaid, and by the acts aforesaid, obstructed said avenue, streets, and sidewalks aforesaid in front of and adjacent to the plaintiff's premises, and have deprived plaintiff of his property in said avenue and streets, and of the easements appurtenant to his said premises, and have obstructed his said premises, and the access and approach of light and air thereto, to which he is by law entitled, and have deprived him of the free and uninterrupted passage and circulation of light and air through and over said streets and avenue aforesaid for the benefit of his property hereinbefore described, and have thereby diminished the value of this plaintiff's said premises."   But it has not been stated in this conclusion of fact, neither is it to be inferred from its language, that the court intended to, or did, make any actual allowance to the plaintiff on account of this structure not in fact affecting or injuring his property.   On the contrary, the statement is that the defendants had in the manner stated, and by the acts aforesaid, obstructed said avenue, streets, and sidewalks aforesaid in front of and adjacent to the plaintiff's premises, and have deprived plaintiff of his property in said avenues and streets, and of easements appurtenant to his said premises, and have obstructed his said premises, and the access and approach of light and air thereto; and that, as a matter of fact, the evidence proved was the truth; and if it was, the court could do no less, in a proper disposition of the action, than to compensate the plaintiff for the obstructions which had been erected and maintained in front of and adjacent to his land.   The effect, as it has been in this manner expressed in the decision, was direct by way of injuring and depreciating in value the plaintiff's property; and it was for the injury resulting from this source, and from no other, that the court concluded that the plaintiff's loss had extended to the sum of $20,000.   This is the only construction which can fairly be placed upon the language of this finding of fact; and it clearly distinguishes this case from the others which have been mentioned, where the obstructions complained of were in no manner connected with the property in controversy, and produced no direct or injurious effect upon it.   Here the case is entirely different.   The structure, in great part, complained of was commenced southerly of the northerly line of the plaintiff's property, and with the erections made upon it extended therefrom to its ter-

mination, near Fifty-Ninth street. It was one continuous erection, from which it would not be unreasonable to presume that his property was injured in the manner described by the court. The language referred to in the eleventh finding—that the defendants threaten and intend to continue to maintain, use, and operate the said railroad, stations, structures, and other erections, and will thereby continue to injure and damage the said plaintiff and his said property—justifies a construction of the preceding finding no broader or extended than that which has already been given to it. The language is similar in its effect, and discloses no intention on the part of the court to remunerate the plaintiff for anything beyond the actual injury sustained by him in consequence of this structure, and the uses made of it and of the railway in front of his property. The case in these respects seems to have been properly disposed of by the justice presiding at the trial.

The witness O'Reilly had his attention directed to two lots immediately north of the plaintiff's property, and fronting on the east side of Sixth avenue. These lots were 25 feet front by 95 in depth, which were the precise dimensions of the plaintiff's northerly lot. And he was asked whether he estimated the value of these two lots, which had been offered to him for the price of $23,000 each. The defendants' counsel objected to the question as immaterial, but the objection was overruled, and an exception taken to the decision. And he added that he valued these lots at $20,000 apiece, if he could use them for the purpose he intended. This ruling of the court has been earnestly insisted upon as erroneous; and the case of *Sixth Ave. R. Co.* v. *Metropolitan El. Ry. Co.*, 9 N. Y. Supp. 207, has been referred to as sustaining the correctness of this objection. But it is far from doing so; for the property, concerning the value of which inquiries were there held to have been improperly allowed, was distant from, and in no manner connected with, that which was involved then in controversy; while here the two lots to which the attention of the witness was directed were situated the same as the plaintiff's northerly lot, and sustained substantially the same relation to the structure of the defendants. And while the evidence of their valuation may have been of no service whatever in the case, as the attention of the witness was afterwards brought to the lots owned by the plaintiff, there was no substantial error in taking the answer of the witness. Indirectly, it necessarily did include the plaintiff's northerly lot, and in that manner bore a relation to the controversy in the action; and that, as well as the other facts, substantially distinguished this part of the case from the inquiries held to be improperly allowed in the instance already cited. An exception was also taken to the ruling allowing general evidence to be given of the manner in which the property had been improved and occupied in this vicinity, and upon Fifty-Seventh, Fifty-Eighth, and Fifty-Ninth streets; but, although having no very direct effect upon the case, it was competent for the court to receive it as indicating the probable uses and advantages which might have been derived by the plaintiff from the improvement of his own property. A similar objection was taken to proof of the posts or columns between Fifty-Eighth and Fifty-Ninth streets supporting a part of this structure; but as this was a portion of that which formed the subject of complaint, and from which the plaintiff's property had probably received injury, there was no impropriety in permitting this evidence to be given. Neither was there in allowing the photograph of the Sherwood building, on the southerly corner of the Fifty-Seventh street and Sixth avenue. In fact, there was no evidence received by the court which it can be consistently held, in view of what was said in the *Case of Sixth Ave. R. Co.*, which should have been excluded by the court. If it did not directly bear upon the controversy included in the action, it had an indirect effect upon it; and that justified the court in receiving it.

The allowance made by the judgment for the diminution in value of the plaintiff's land by the maintenance and use of this structure in front of it has

been objected to as unwarrantably large.  But the evidence of the witnesses O'Reilly and Fox, who were engaged in business as dealers in real estate, was that the difference in the value of these lots, as that value would have been if these structures had not been placed in the street, and their value with the street occupied and obstructed in this manner, was much greater than that allowed by the judgment; and their testimony upon this subject was likewise sustained by that of the plaintiff himself.  Bernard Smyth and William J. Roome, who were examined as witnesses on behalf of the defendants, and were likewise engaged as dealers in real estate, testified that in their judgment the plaintiff's lots were worth the sum of $150,000 as they were situated, and had received no substantial injury from these structures and their use in the manner already mentioned; and other evidence was given by witnesses produced by the defendants to the effect that property lower down the avenue, and used for business purposes, had not been depreciated or injured by the erection of the railway and its use in the passage and repassage of trains. But this evidence, with that given on behalf of the plaintiff concerning the important effect of these structures and this use upon his lots, created a direct conflict, which it was for the court at the trial to settle and determine.  And the probabilities suggested by the leading facts located at this point cannot be said to be inconsistent with the conclusion which he adopted; for it is hardly reasonable to suppose that a structure of the character described, extending over the entire surface of the avenue between the curbs, and upwards of a foot into the sidewalk itself, where the pillars or columns supporting it had been placed, could be erected as this was, and used for the objects of railway trains in front of and adjacent to the plaintiff's property, without producing substantial injury to it.  As it was situated, for the distance of 28 feet and 4 inches, he was wholly deprived of the unobstructed use of the street, with the exception of 18 feet and 10 inches in width of the sidewalk; and, below the point to which that obstruction extended, the street was obstructed by the railway, and the passages connected with it, to within 31 feet of the front of the plaintiff's land.  And the evidence tended to prove that both the light and the air were excluded from the premises by these structures, and smoke and cinders distributed over them from the trains constantly passing and repassing upon the railway, with the exception of a few hours between midnight and morning.  The probabilities of the case were with the plaintiff; and under this evidence it was for the court to determine what would be a fair measure of compensation to him for the diminished value of his property from these sources; and, in making this allowance, the fair effect of the evidence, as the court was authorized to accept and act upon it, has not been transcended; and the judgment should be affirmed, with costs.  All concur.