SHERWOOD *et al. v.* METROPOLITAN EL. RY. CO. *et al.*

(*Supreme Court, General Term, First Department.* December 31, 1890.)

1. ELEVATED RAILROADS—DAMAGES TO PROPERTY—EVIDENCE.
   The testimony of a witness to the fact of a general decrease in rents in the immediate vicinity of property alleged to be injured by the erection of an elevated railroad in front of it is competent, and not within the objection of the rule excluding evidence of injury to property not connected with that in question.

2. SAME.
   In estimating damages to property, resulting from the erection of an elevated railroad in front of it, the fact that the purchase of the property has proven a profitable business adventure to the owner cannot be taken into consideration.

Appeal from special term, New York county.

Action by Nancy L. Sherwood and Mary E. Blodgett against the Metropolitan Elevated Railway Company and the Manhattan Railway Company, for past damages sustained by the construction and operation of defendants' elevated railway, and for an injunction *nisi* against such operation. There was judgment for plaintiffs, and defendants appeal.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*E. G. James*, for appellants. *J. E. Burrill*, for respondents.

BARRETT, J. Several of the questions here presented were considered in the cases of *Conkling* and *Knox* v. *The Same Defendants, ante,* 846, 848, (argued at the November term,) and we refer to the opinion handed down in these cases as a sufficient expression of our views with regard to three of the appellants' points—*First,* the qualifications of the experts; *second,* the statute of limitations; and, *third,* the claim of acquiescence. The claim of excessive damages for diminution of rental values calls for no special consideration. The sum awarded for such diminution is amply supported by the tes-

timony, and we are at a loss to understand the emphasis of the appellants' criticism on that head. It is contended that the learned judge admitted testimony in disregard to the rule laid down in *Sixth Avenue R. Co.* v. *The Same Defendants*, 9 N. Y. Supp. 207. An examination of the record, however, shows that the appellants are here in error. The witness Mead was not asked as to the rentals of property owned by other persons "in no way connected with that owned by the plaintiffs." The question put to him was this: "*Question.* What has been the general course of rents on Sixth avenue from Fifty-Fifth to Fifty-Seventh streets, in the immediate vicinity of the property in question here since the year 1877?" And his answer was: "A general decrease." This was entirely competent. We find nothing in the testimony of this witness elicited upon his direct examination in any way infringing upon the rule laid down in the *Sixth Avenue Railroad Company Case.* The learned counsel for the defendants put some questions to him upon cross-examination, which brought out special instances of such general decrease, but the plaintiffs were surely not responsible for this line of examination, and it is scarcely ingenuous to charge them with the incompetency of the answers there elicited. The sum awarded for the value of the easements was much less than the testimony would have justified, and we can only account for the vehement protest against this award, which we find in the appellants' brief, upon the supposition that the bearing of certain established facts upon the direct testimony has been overlooked. The testimony which undoubtedly governed at special term was that of the plaintiffs' expert, Mr. O'Reilly. This was proper, as the testimony of the defendant's, Mr. Pearson, was wholly unreliable. This gentleman placed the value of half a million dollars upon the plaintiffs' property. The land, he said, was worth approximately $350,000, and the building $150,000. This was an extraordinary piece of testimony in view of the fact that the defendants had already put in evidence Mr. Sherwood's statement (made in 1883 to the United States Life Insurance Company for the purpose of obtaining a loan upon the property) to the effect that the value of the building was $250,000. It was still more extraordinary when we consider this witness' subsequent statement, that it would have cost $200,000 to construct the building in 1883, and something less than $230,000 in April, 1890. This witness also testified that the increase in value of real estate on Sixth avenue, between Fifty-Fifth and Fifty-Ninth streets, from 1877 to 1890, was 200 per cent., and about the neighborhood in question even 300 per cent. He gave it as his opinion, too, that the rental value of the plaintiffs' property in the years 1884 and 1885 was but $35,000, when as a matter of fact it brought in $44,482 from May, 1883, to May, 1884, $45,444 from May, 1884, to May, 1885, and $43,222 from May, 1886. It is impossible to account for such loose, conflicting, and plainly inaccurate testimony upon any other theory than want of actual experience as to this particular locality. Indeed, Mr. Pearson admitted that his experience did not include the care of buildings on Sixth avenue; that such buildings had not come into the hands of his company, (the Equitable Life;) and that Sixth avenue had "been exempt from close observation" in that way. The learned judge was therefore entirely justified in preferring the testimony of the plaintiffs' expert, O'Reilly. The latter testified distinctly that the value of the plaintiffs' land in 1887, before the elevated railroad was built, was $175,000, and he placed its present value at but $150,000. Here is a net decrease of $25,000, and such decrease can be attributed upon the evidence to nothing but the construction and operation of this railroad. But this decrease of $25,000 is by no means all. Mr. O'Reilly further testified that property in the vicinity (not on Sixth avenue, and consequently not affected by the road) during the period covered by the decrease of $25,000 actually increased in value upwards of 30 per cent. Here is far more than enough to make up the remaining $10,000 of the learned judge's award. This analysis, however, is without regard to the building. When that is considered, the moderate character of the award

becomes still more striking. In the appellants' criticism of this award the testimony of Mr. O'Reilly (to the effect that the building would cost 30 per cent. more to-day to erect than it did in 1879) seems to have been entirely overlooked. That would give the building a present value of $338,000, subject to depreciation for mere wear and tear, if Mr. Sherwood's statement of the cost be taken as accurate. If, however, Mr. O'Reilly's estimate of the cost should govern, namely, $225,000, we have still a present value of $292,-500. Add to these items the original value of the land as given by Mr. O'Reilly. ($175,000,) and we have a total value, on the basis of Mr. Sherwood's statement, of $513,000, and on that of Mr. O'Reilly $467,500. Now, Mr. O'Reilly testified that the actual value of the entire property to-day is but $425,000. Thus we have a decrease of $88,000 on the one statement and of $42,500 upon the other. Making all reasonable allowance for the difference between a new building and one 10 years old, we have still a wide margin in excess of the sum awarded. If, however, we add (as the testimony certainly justifies us in doing) to the $175,000 of original lot value a reasonable percentage for the increase which, but for the elevated railroad, the lots would have shown, the margin is still further extended, and the justice of the judgment, under the principles enunciated in *Drucker* v. *The Same Companies*, 106 N. Y. 157, 12 N. E. Rep. 568, becomes apparent. The appellants seem to think that a property owner who has made a good bargain in real estate on the line of their continuous trespasses should not complain of their wrongful acts, nor seek compensation for property embraced within his deed, which they, as wrong-doers, have appropriated to the use of their railroad. This is a novel doctrine. It is certainly one for which no support can be found in the law of real estate, nor, we may be permitted to add, in the moral law. Much, also, of the unjustifiable criticism which we find in the appellants' brief seems to have been aroused by the fact that this property has been a source of profit to Mr. Sherwood, and is now a source of profit to the plaintiffs. But it would undoubtedly be a source of much greater profit if the defendants' structure were not where it is, and if their railroad were not operated as it is. And as much may truly be said of the past. At all events, property owners have a perfect right, whether their adventures be successful or unsuccessful, to recover the actual damages sustained during their ownership, by reason of the past diminution of the rental values of their property, and they are also entitled to just compensation for so much of their easements as have been appropriated by the defendants to the use of their railroad. The judgment here fairly covered these subjects, and it should therefore be affirmed, with costs. All concur.