S. CHARLES WELSH, as Trustee for ELIZABETH H. ARMSTRONG, under the Last Will and Testament of GEORGE W. WELSH, Deceased, Plaintiff, *v.* INTERBOROUGH RAPID TRANSIT COMPANY, Defendant.

(Supreme Court, New York Special Term, May, 1917.)

Easements — of light, air and access — city of New York — injunctions — evidence —damages — elevated railroads.

On the ground that it is an unlawful interference with his street easements of light, air and access, the owner of a corner building on Third avenue in the city of New York, along which is operated an elevated railway, may be granted an injunction to restrain the continuance by the railway company of the construction of a signal tower and storage platform with a supporting column in the sidewalk at the street intersection, though such structure is being built wholly within the lines of the intersecting streets, so that if the boundary lines of plaintiff's property were projected to the east across Third avenue or to the south across the intersecting street they would not in either case touch any portion of the structure of which complaint is made.

MOTION for an injunction *pendente lite.*

Taylor, Knowles & Hack, for motion.

James L. Quackenbush, opposed.

GIEGERICH, J. The plaintiff asks for an injunction to restrain the defendant from continuing the construction of an addition to the elevated structure, consisting of a signal tower and storage platform, with a supporting column in the sidewalk, at the intersection of Third avenue and One Hundred and Twentieth street, in the borough of Manhattan, city of New York. The plaintiff's property is located at the northwest corner of the streets named. The elevated railroad is in Third avenue. The defendant's counsel insists that no right of the plaintiff is being invaded because the additional structure complained of is being built wholly within the lines of the intersecting streets, so that, if the boundary lines of the plaintiff's property were projected out to the east across Third avenue or to the south across One Hundred and Twentieth street, they would not, in either case, touch any portion of such structure. He does not submit any brief on the point, but states in his affidavit " that it is now definitely settled that the street easements of light, air and access appurtenant to abutting properties are confined to the portion of the street directly in front of the abutting property and included within the extension of the side lines thereof." I cannot share the affiant's confidence that the law is as he states. In the first place, it is manifest that, by the operation of the laws of nature, light and air do come to an abutting owner's property not only from directly across the street but diagonally, aslant from the right and the left and cutting athwart the

extensions of the side lines of the property, which the
affiant erroneously assumes are the boundaries of an
owner's easements. That this is true becomes more
emphatically apparent if it be conceived that solid
structures be built in the street touching on either
hand the extended side lines of an owner's property
and reaching entirely across the street and from the
ground to a great height. Then, instead of fronting
upon a street, with the light, air and access of a street,
such abutting owner's building would front upon a
mere airshaft, the other three sides of which would be
the two unlawful structures in the street and the walls
of the building across the street. Such an abutting
owner would have no air nor light, except such as
could find its way down through the airshaft, and no
access whatever in either direction. And yet, accord-
ing to the affidavit, he would not be deprived of any
easement of light, air or access and would have no
redress. It is inconceivable that the courts ever have
or ever will lay down such a rule while professing to
give damages to an owner for unlawful interference
with his street easements. It becomes necessary, then,
to see just what has been held. In *Galway* v. *Metro-
politan El. R. Co.,* 13 N. Y. Supp. 47, the General
Term of this department, at pages 48 and 49, said:
" To support the appeal, the objection has been taken
that the court in its decision required the defendants
to pay the plaintiff for the depreciated value of his
property arising out of the construction and mainte-
nance of the station and the buildings upon it, which
were northerly of the north line of his property. But
if this has been done, as the fact was that the structure
extended continuously from a point 28 feet and 8
inches south of the northerly line of the plaintiff's lots,
it would not appear to include an erroneous allowance,
if in truth and in fact the property was injured by this

extension of the structure over the surface of the avenue. In that respect there would be a manifest distinction between what was said in *Kings County Fire Ins. Co.* v. *Stevens,* 101 N. Y. 411, 417; *Hier* v. *New York & W. S. R. C.,* 40 Hun, 310, and *Rummel* v. *New York, L. & W. R. R. Co.,* 9 N. Y. Supp. 404; and the present case, which is peculiarly distinguishable therefrom by the facts included in it. For in those cases the obstruction complained of was so far distant from the property in question as not to be the source of any substantial injury to it. While in this case, if this continuous structure interfered with the passage of light and air to and from the plaintiff's property, remuneration for that injury, so far as that was the effect, would be due to him under the well settled principles which have become applicable to this class of cases. But it is evident from the language of the decision which has been made that the court did no more than to include, or intend to include, compensation to the plaintiff for the loss or injury that had been sustained by the diminution in value of his lots by the structure immediately in front of them and adjacent to them.'' Again, after referring to one of the findings of the court below, the General Term added: '' This is the only construction which can fairly be placed upon the language of this finding of fact, and it clearly distinguishes this case from the others which have been mentioned where the obstructions complained of were in no manner connected with the property in controversy and produced no direct or injurious effect upon it. Here the case is entirely different. The structure, in great part, complained of was commenced southerly of the northerly line of the plaintiff's property, and with the erections made upon it extended therefrom to its termination, near Fifty-ninth street. It was one continuous erection, from

which it would not be unreasonable to presume that his property was injured in the manner described by the court.'' Again, later in its opinion, the court, in speaking of certain posts or columns, apparently not in front of the plaintiff's property, at page 50 said: ''A similar objection was taken to proof of the posts or columns between Fifty-eighth and Fifty-ninth streets supporting a part of this structure. But as this was a portion of that which formed the subject of complaint, and from which the plaintiff's property had probably received injury, there was no impropriety in permitting this evidence to be given.'' This case was affirmed by the Court of Appeals in 128 New York, 132, although the point now under consideration was not referred to in the opinion there written. In *Kearney* v. *Metropolitan El. R. Co.*, 13 N. Y. Supp. 608, the court said: '' It was also argued that the court erred in admitting testimony as to light being cut off from plaintiff's premises by the shadows cast by the station of the defendant, which was not in front of the premises, and was on the avenue 25 feet south of them. The ground taken is that the easements of the plaintiff are such as exist only directly in front of the premises, and are a burden upon the part of the street directly in front, and not to any extent on the street north or south. This does not seem to coincide with the practical use of a street in tending to benefit property upon it. More light is thrown upon the house from the sides than immediately in front. The alternative would be that the street might be closed without compensation, provided the part immediately in front were not taken. There was no error in the admission of the testimony.'' This case, too, was affirmed by the Court of Appeals (129 N. Y. 76), but again without discussion of the point now under consideration. I will refer now to cases which, at least on the surface, look the other way. In *Hindley* v. *Manhattan R. Co.*, 185

N. Y. 335, the court was considering the question, which had been certified to it from the court below, of the admissibility as evidence of settlements made by the defendant with other owners than the plaintiff and proceedings to condemn other property. The court there, at page 343, said: " The easements appurtenant to A's lot are separate and distinct from those appurtenant to B's lot, and there can be no community of interest in the easements unless there is a like interest in the lots themselves. Such easements are not coterminous with the street, but in the absence of special circumstances, of which there was no proof in the case before us, are confined to that portion of the street which is directly in front of the property affected. We regard this proposition as so well settled that the citation of authorities is not required." It should be observed that the courts have used the words " directly in front of " in contrast with the expression "coterminous with the street " and not in contrast with some portion of the street immediately adjacent to, although outside of, the side lines of the plaintiff's property projected across the street. I cannot see that there is any warrant for understanding that the court meant to use the words " directly in front of " in the strict and mathematical sense which the defendant's learned counsel would give to them. There was no occasion in the nature of the question before the court that I can discover for it to have expressed any such thought as the defendant's counsel seeks to ascribe to it. On the contrary, the question was whether the evidence could go ranging up and down the street a block away or two blocks away or to the ends of the street, — " coterminous " was the word the court used — and whether the plaintiff could show what had been done in the case of other and distant owners and in other proceedings. But even if it

be assumed that the court intended the words
" directly in front of " to have the narrow meaning
the defendant seeks to attribute to them, still the
defendant's case is not made out. We have the
words " absence of special circumstances " in the
passage quoted, but the court does not indicate what
would constitute special circumstances sufficient to
take a case out of the rule if any rule was intended to
be stated. We have present here the special circum-
stance that the property is located on a corner and
that, but for the structure complained of, the windows
on the corner facing Third avenue toward the east
would receive the light coming from the east along the
length of One Hundred and Twentieth street, and the
same is true of the windows close to the corner and
facing One Hundred and Twentieth street to the
south, which would, but for the structure, receive the
light coming up Third avenue. In other words, in the
case of a corner the easements of light and, for that
matter, of air too are different and superior to the
easements of an inside lot. This fact is of particular
importance to the plaintiff in this case because one of
the tenants of an upper floor of his premises is a den-
tist and another floor is used for a dental laboratory,
and especially good light is required for the fine work
of such occupations, which light will be diminished by
the structure contemplated. *Keteltas* v. *Interborough
R. T. Co.,* 164 App. Div. 870, is another case in which
language is used which gives some color to the claim
of the defendant. There the court said: "Although it
is stated in the decision that ' the plaintiffs are not
entitled to recover damages or to the award of injunc-
tive relief in respect to such portions of defendants'
structure as are not in the portion of Pearl street
directly in front of the premises in suit,' a comparison
of the awards with the testimony upon which they are

based indicates very clearly that this rule was not closely adhered to.'' An examination of the entire opinion shows, however, that evidence of damage was admitted by the trial court relative to portions of the street quite remote from the plaintiff's property. There is a natural tendency on the part of owners seeking damages against the elevated railroad companies to wander too far away from their own property for proof of damage to apply to their own case, and this is something the courts have to check, and that, I take it, was all that the courts intended to do or indicate in the two cases last above cited. It may be that an owner whose property does not abut upon the elevated structure, or, employing the test suggested by this defendant's counsel, the side lines of whose property, if projected across the street, would not touch the structure, may not be allowed damages, even though some of his light and air, coming diagonally along the street, may be cut off, but where the structure does run in front of a property I have not been able to find any case where the injured owner has not been allowed to recover for all the actual and clearly demonstrable loss of light, air and access, even though such loss be in part due to a portion of the structure close to though not within the projected side lines of the property. It is entirely proper and just to hold an owner down to proof of conditions very close to his own property and to prevent the evidence from wandering, but such a rigid rule as the defendant proposes is not necessary for its protection, but would impose losses upon injured property owners as needless and illogical as they would be unjust. The motion should be granted, with ten dollars costs.

Motion granted, with costs.